Joe R. STRINGER, Desiree H. Stringer, Appellants,

v.

CENDANT MORTGAGE CORPORA-TION, d/b/a PHH Mortgage Services Corporation, Appellee.

No. 99–1301.

Supreme Court of Texas.

Argued March 22, 2000.

Decided June 8, 2000.

Rehearing Overruled Aug. 24, 2000.

**354**

Ralph E. Allen, Tyler, for Appellants.

Elizabeth Grace Smith, Davis & Opper, for Appellee.

Justice BAKER delivered the opinion of the Court.

This case is before the Court on a certified question from the United States Court of Appeals for the Fifth Circuit. The question is: under the Texas Constitution, may a home-equity lender require the borrower to pay off third-party debt that is not secured by the homestead with the proceeds of the loan? 199 F.3d 190, 192 (5th Cir.1999). We answer the certified question yes.

## I. BACKGROUND

The Texas Constitution protects the homestead from forced sale for payment of all debts other than those specifically excepted by the Constitution. *See* TEX. CONST. art. XVI, § 50. In 1997, the citizens of Texas amended the Constitution to allow home equity loans. The amendment's purpose was to expand the types of liens for loans that a lender, with the homeowner's consent, could place against a homestead. The amendment allows homeowners who have either entirely repaid their home loans or who have accumulated equity in their homestead over and above existing liens to apply for a loan against that equity.

The first part of the amendment details the terms and conditions of a loan and the rights and obligations of both a borrower and the home-equity lender. *See* TEX. CONST. art. XVI, § 50(a)(6)(A)-(Q). It includes section 50(a)(6)(Q)(i), which provides that a home-equity lender cannot require a borrower to apply the loan proceeds "to repay another debt except debts secured by the homestead or debt to another lender." TEX. CONST. art. XVI, § 50(a)(6)(Q)(i). The second part of the amendment requires a lender to provide a borrower with a separate written notice twelve or more days before the loan's closing to obtain a valid lien against the borrower's homestead. *See* TEX. CONST. art. XVI, § 50(g)(A)-(Q). The notice's mandated language includes the following: "Loans described by section 50(a)(6), Article XVI, of the Texas Constitution must

not require [the homeowner] to apply the proceeds to another debt that is not secured by [the home] or to another debt to the same lender." TEX. CONST. art. XVI, § 50(g)(Q)(1).

Joe and Desiree Stringer applied for a $227,150.00 home equity loan from Cendant Mortgage Corporation. Cendant gave the Stringers the notice that section 50(g)(Q)(1) requires. When the loan closed, Cendant required the Stringers to use $106,174.92 of the loan proceeds to pay certain designated third-party creditors. None of these debts was secured by a lien on the Stringers' homestead. About six months after closing the loan, the Stringers demanded that Cendant refund the money the Stringers used to pay the third-party creditors. Cendant refused, and the Stringers sued Cendant in a Texas district court, contending that section 50(g)'s mandated notice meant that Cendant could not require the Stringers to pay a debt that was not secured by their homestead. The Stringers asserted that because Cendant failed to comply with its obligations in the notice provision, Cendant was subject to the amendment's forfeiture provision. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x).

Cendant removed the case to federal district court on diversity grounds. Cendant then moved to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The district court granted the motion. *Stringer v. Cendant Mortgage Corp.*, No. 6:98-CV-664 (E.D.Tex. Dec. 14, 1998). The Stringers appealed the dismissal order. The Fifth Circuit reviewed the two provisions of the Texas Constitution and decided that they could not be reconciled. The Fifth Circuit observed that section 50(a)(6) reads that the lender may force payment of third-party debts unsecured by the home, while section 50(g)(Q) reads that the lender may not. Based on this viewpoint, the Fifth Circuit certified the question for this Court to resolve.

## II. APPLICABLE LAW

When we interpret our state constitution, we rely heavily on its literal text and must give effect to its plain language. *See Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex.1997); *City of Beaumont v. Bouillion*, 896 S.W.2d 143, 148 (Tex.1995); *Edgewood Indep. Sch. Dist. v. Kirby*, 777 S.W.2d 391, 394 (Tex.1989). We strive to give constitutional provisions the effect their makers and adopters intended. *See City of El Paso v. El Paso Community College Dist.*, 729 S.W.2d 296, 298 (Tex.1987); *Farrar v. Board of Trustees of Employees Retirement Sys. of Tex.*, 150 Tex. 572, 243 S.W.2d 688, 692 (1951). We avoid a construction that renders any provision meaningless or inoperative. *See Hanson v. Jordan*, 145 Tex. 320, 198 S.W.2d 262, 263 (1946). In construing a constitutional amendment, we may also consider its legislative history. *See* TEX. GOV'T CODE § 311.023(3); *Harris v. City of Fort Worth*, 142 Tex. 600, 180 S.W.2d 131, 133 (1944).

## III. ANALYSIS

The Stringers allege that Cendant improperly required them to use loan proceeds to pay unsecured debts to lenders other than Cendant. The Stringers claim that section 50(a)(6) is ambiguous, but that section 50(g)(Q)(1)'s notice provision clearly states the Legislature's true intent to prohibit home-equity lenders from requiring borrowers to use loan proceeds to pay third-party debts not secured by the home. The Stringers contend that Cendant violated both its constitutional and contractual obligations by requiring them to use part of their loan proceeds to pay off debts that were not secured by their home. Therefore, the Stringers assert that Cendant should forfeit all principal, interest, and payments as section 50(a)(6)(Q)(x) mandates. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x).

Cendant counters that section 50(a)(6) controls its rights and obligations, and that section 50(g)(Q) merely provides the notice

that a home-equity lender must give a prospective borrower to secure a valid lien against the homestead. Cendant argues that section 50(a)(6) allows it to require borrowers to use loan proceeds to pay third-party debts unsecured by the home.

We first consider the amendment's literal text. *See Dietz*, 940 S.W.2d at 89. Article XVI, section 50(a)(6)(Q)(i) provides:

Sec. 50. (a) The homestead shall be and is hereby protected from forced sale, for the payment of all debts except for:

. . .

(6) an extension of credit that:

. . .

(Q) is made on the condition that:

. . .

(i) the owner of the homestead is not required to apply the proceeds of the extension of credit to repay another debt except debt secured by the homestead or debt to another lender.

TEX. CONST. art. XVI, § 50(a)(6)(Q)(i).

Article XVI, section 50(g)(Q)(1)provides:

(g) An extension of credit described by Subsection (a)(6) of this section may be secured by a valid lien against homestead property if the extension of credit is not closed before the 12 th day after the lender provides the owner with the following written notice on a separate instrument:

"NOTICE CONCERNING EXTENSIONS OF CREDIT DEFINED BY SECTION 50(a)(6), ARTICLE XVI, TEXAS CONSTITUTION:

"SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION ALLOWS CERTAIN LOANS TO BE SECURED AGAINST THE EQUITY IN YOUR HOME. SUCH LOANS ARE COMMONLY KNOWN AS EQUITY LOANS. IF YOU DO NOT REPAY THE LOAN OR IF YOU FAIL TO MEET THE TERMS OF THE LOAN, THE LENDER MAY FORECLOSE AND SELL YOUR HOME. THE CONSTITUTION PROVIDES THAT:

. . .

"(Q) LOANS DESCRIBED BY SECTION 50(a)(6), ARTICLE XVI, OF THE TEXAS CONSTITUTION MUST: (1) NOT REQUIRE YOU TO APPLY THE PROCEEDS TO ANOTHER DEBT THAT IS NOT SECURED BY YOUR HOME OR TO ANOTHER DEBT TO THE SAME LENDER."

TEX. CONST. art. XVI, § 50(g)(Q)(1).

Section 50(a)(6) allows a home-equity lender to require the borrower to use loan proceeds to pay: (1) debts secured by the homestead; and (2) non-homestead debts to third-party creditors. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(i). On the other hand, section 50(g) provides that a home-equity lender cannot require a borrower to apply loan proceeds to another debt that is not secured by the home or to another debt to the same lender. *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(i).

We agree with the Fifth Circuit that the plain language of section 50(a)(6)(Q)(i) and section 50(g)(Q)(1) conflict. And, there is nothing in the amendment, its legislative history, or the parties' arguments that hints at a legislative reason for the conflict other than speculation that the difference in the language arises from an oversight. Nevertheless, a plain reading of the provisions leads us to the conclusion that section 50(a)(6)(Q)(i) provides the substantive rights and obligations of lenders and borrowers while section 50(g)(Q)(1) provides only the language for the mandatory notice to borrowers. Section 50(a)(6), in its totality, establishes the terms and conditions a home-equity lender must satisfy to make a valid loan. *See* TEX. CONST. art. XVI, § 50(a)(6). Section 50(a)(6) also provides that the lender forfeits all principal and interest of the loan if it fails to comply

with the obligations set out in section 50(a)(6). *See* TEX. CONST. art. XVI, § 50(a)(6)(Q)(x).

On the other hand, section 50(g) provides that, to secure a valid lien against the borrower's homestead, a home-equity lender must provide the borrower with the mandated notice twelve or more days before the loan closing. *See* TEX. CONST. art. XVI, § 50(g). Thus, section 50(g) notifies the prospective borrower of the terms and conditions that apply to the home-equity lender's extension of credit. But section 50(a)(6) and the loan documents themselves provide the substantive rights and obligations of the lenders and borrowers. Therefore, we hold that section 50(g)'s notice provisions do not independently establish rights or obligations for the extension of credit.

*The Regulatory Commentary on Equity Lending Procedures* supports our view. *See Regulatory Commentary on Equity Lending Procedures* (Jan. 6, 1998). Although the commentary is advisory and not authoritative, it represents four Texas administrative agencies' interpretation of the Home Equity Constitutional Amendment. These agencies are responsible for regulating the entities that make home equity loans. The Commentary's purpose is to provide guidance to lenders and consumers about the regulatory views on the meaning and effect of article XVI, section 50. *See Regulatory Commentary*, at 2.

The Commentary construes section 50(a)(6)(Q)(i) as allowing a lender to require a borrower to pay off debts secured by the homestead or debts to third-party creditors. *See Regulatory Commentary*, at 10. The Commentary also notes that an owner may voluntarily pay a debt owed to the same lender, but the lender may not require payment of such a debt, unless it is secured by a lien on the home. *See Regulatory Commentary*, at 10. Further, the Commentary acknowledges that certain provisions of section 50(g)'s notice requirements do not mirror section 50(a)(6)'s substantive requirements for home equity loans. The Commentary concludes that the substantive requirements prevail over the notice requirements about a lender's responsibilities. *See Regulatory Commentary*, at 11.

■ Because we hold that section 50(a)(6)(Q)(i)'s substantive provisions prevail over section 50(g)(Q)(1)'s notice provisions, Cendant's only obligation under section 50(g)(Q)(1) was to give the Stringers notice more than twelve days before closing in the exact form and language that section 50(g)(Q)(1) mandates. Accordingly, we reject the argument that the notice itself prohibited Cendant from requiring the Stringers to pay third-party debts not secured by the homestead. Here, Cendant gave the required notice more than twelve days before closing and secured a valid lien against the Stringer's homestead.

■ We recognize that the conflict between section 50(a)(6)(Q)(i) and 50(g)(Q)(1) can mislead prospective home-equity borrowers. Therefore, to avoid any confusion or misunderstanding, home-equity lenders should include, in addition to the required section 50(g)(Q)(1) notice, a notice that identifies the conflict between the two sections and explains section 50(a)(6)(Q)(i)'s substantive effect. This notice should state:

## ADDITIONAL NOTICE

The notice above states that your home-equity lender may not require you to apply the loan proceeds to another debt that is not secured by your home. Although the Texas Constitution requires that the notice include this statement, the statement conflicts with another provision of the Texas Constitution. That provision permits your home-equity lender to require you to apply the loan proceeds to a debt to another lender that is not secured by your home. This provision is controlling, and you should disregard the contrary statement in the notice.

Although home-equity lenders should give this additional notice to avoid confusion to borrowers, the failure to give this additional notice does not make a lien on a homestead unenforceable or give rise to any liability for the lender.

### IV. CONCLUSION

 We hold that under the Texas Constitution, a home-equity lender may require a borrower to use loan proceeds to pay third-party debt that is not secured by the homestead. Accordingly, we answer the certified question yes.