August 15, 2006

Mr. Albert Hawkins
Executive Commissioner
Texas Health and Human Services Commission
Post Office Box 13247
Austin, Texas 78711

Opinion No. GA-0447

Re: Whether the Office for the Prevention of Developmental Disabilities is an autonomous state agency or whether it is subject to oversight and control by the Health and Human Services Commission (RQ-0434-GA)

Dear Commissioner Hawkins:

You request an opinion regarding the Office for the Prevention of Developmental Disabilities (the "Office") established under subchapter C, chapter 112 of the Human Resources Code (the "Act").[1] *See* TEX. HUM. RES. CODE ANN. §§ 112.041–.051 (Vernon 2001). Specifically, you ask:

> 1. Is [the Office] an autonomous state agency, or is it, by contrast, subject to [the Health and Human Services Commission's] fiscal oversight and control?

> 2. Is [the Office] authorized to solicit funds such as private grant money?

> 3. Assuming that [the Office] does have authority to solicit funds as described above, then, pursuant to Tex. Const. art. XVI, § 6(b) and according to its organic statute, but in the absence of specific legislative appropriation, is [the Office] authorized to spend funds received through grants and donations received from public, private, state, and federal sources?

Request Letter, *supra* note 1, at 1.

---

[1]*See* Letter from Albert Hawkins, Executive Commissioner, Texas Health and Human Services Commission, to Honorable Greg Abbott, Attorney General of Texas (Jan. 20, 2006) (on file with the Opinion Committee, *also available at* www.oag.state.tx.us) [hereinafter Request Letter].

## I.     Background

In 1989, the legislature created the Office to "minimize the economic and human losses in Texas caused by preventable disabilities through the establishment of a joint private-public initiative." Act of May 28, 1989, 71st Leg., R.S., ch. 1209, § 1, 1989 Tex. Gen. Laws 4912, 4912; TEX. HUM. RES. CODE ANN. § 112.041 (Vernon 2001). In 1999, the legislature administratively attached the Office to the Texas Department of Mental Health and Mental Retardation (the "Department"). *See* Act of May 22, 1999, 76th Leg., R.S., ch. 751, § 1, 1999 Tex. Gen. Laws 3359, 3360; TEX. HUM. RES. CODE ANN. § 112.043(a) (Vernon 2001). The legislature directed the Department to

> (1)   provide administrative assistance, services, and materials to the office;

> (2)   accept, deposit, and disburse money made available to the office;

> (3)   accept gifts and grants on behalf of the office from any public or private entity;

> (4)   pay the salaries and benefits of the executive director and staff of the office;

> (5)   reimburse the travel expenses and other actual and necessary expenses of the executive committee, executive director, and staff of the office incurred in the performance of a function of the office, as provided by the General Appropriations Act;

> (6)   apply for and receive on behalf of the office any appropriations, gifts, or other money from the state or federal government or any other public or private entity, subject to limitations and conditions prescribed by legislative appropriation;

> (7)   provide the office with adequate computer equipment and support; and

> (8)   provide the office with adequate office space and permit the executive committee to meet in facilities of the department.

TEX. HUM. RES. CODE ANN. § 112.043(b) (Vernon 2001). The legislature also provided that the executive director and staff are employees of the Office and not the Department. *See id.* § 112.043(c). Additionally, the legislature appropriated to the Department in 1999, 2001, and 2003 funds to pay for salaries, benefits, travel expenses, and other items for the Office's support.[2]

---

[2]*See* General Appropriations Act, 76th Leg., R.S., ch. 1589, art II-81, 1999 Tex. Gen. Laws 5446, 5640 ($120,000); General Appropriations Act, 77th Leg., R.S., ch. 1515, art. II-97, 2001 Tex. Gen. Laws 5411, 5618

(continued...)

In 2003, without amending the Act, the legislature effectively transferred the Department's administrative support duties to the Health and Human Services Commission (the "Commission"). The legislature abolished several health services agencies, including the Department, *see* Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 1.26, 2003 Tex. Gen. Laws 611, 641, and transferred the abolished agencies' activities, duties, and powers related to administrative support services, including accounting and financial management, to the Commission. *See id.* § 1.18(a)(1), at 635. And the legislature provided that a reference in the law to an abolished agency or its governing body relating to the transferred powers and activities meant the Commission. *See id.* § 1.18(d), at 636. The legislature also included in the 2005 General Appropriations Act a rider directing the Commission to "expend, from funds otherwise appropriated to the [C]ommission by this Act, an amount not to exceed $100,320 each fiscal year for salaries, benefits, travel expenses, and other support of" the Office. *See* General Appropriations Act, 79th Leg., R.S., ch. 1369, art. II-84, 2005 Tex. Gen. Laws 4324, 4509.

## II. Analysis

### 1. Fiscal control and oversight

You first ask whether the Office is an autonomous state agency or whether it is subject to the Commission's fiscal oversight and control. Request Letter, *supra* note 1, at 1. You suggest that the legislature intended the Commission to provide support and funds to the Office, but that the legislature did not intend the Commission to control and oversee the Office. *See id.* at 3–5. We understand your concern to be with the fiscal independence of the Office rather than with its status as a state agency.

The Office or its executive committee may take all action necessary to carry out the purposes of the Act. The Office's executive committee may take any action approved by a majority of its members. *See* TEX. HUM. RES. CODE ANN. § 112.045(f) (Vernon 2001). It may establish policies and procedures to implement the Act. *See id.* § 112.045(g). Among other powers, the Office may "solicit, receive, and spend grants and donations from public, private, state, and federal sources." *Id.* § 112.044(5). The executive committee may also establish task forces, which are directed to prepare budget plans for particular prevention programs and arrange for funds, and apply for and distribute grants from public and private sources. *See id.* §§ 112.048(c), .050(a). It may hire an executive director who in turn may hire additional staff. *See id.* § 112.047(a), (c). The executive director and staff are employees of the Office. *See id.* § 112.043(c). Based on the plain language of the Act, neither the Office's nor the executive committee's authority to carry out prevention programs, obtain and expend funds, adopt policies and procedures, and hire employees is subject to the Commission's control or oversight. *See Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 642 (Tex. 2004) ("If the statutory language is unambiguous, we must interpret it according to its terms, giving meaning to the language consistent with other provisions in the statute.").

---

[2](...continued)
($120,000); General Appropriations Act, 78th Leg., R.S., ch. 1330, art. II-93, 2003 Tex. Gen. Laws 5023, 5222 ($105,600); *see also* Request Letter, *supra* note 1, at 4.

Additionally, neither section 112.043 nor another provision in the Act authorizes the Commission to exercise fiscal control or oversight over the Office. *See generally* TEX. HUM. RES. CODE ANN. §§ 112.041–.051 (Vernon 2001); *City of Sunset Valley*, 146 S.W.3d at 642. The Act directs the Commission to provide and pay for administrative support services.[3] *See* TEX. HUM. RES. CODE ANN. § 112.043 (Vernon 2001); *see also* HOUSE COMM. ON PUBLIC HEALTH, BILL ANALYSIS, Tex. H.B. 1151, 76th Leg., R.S. (1999) ("This bill also provides that [the Office] is administratively attached to [the Department], and requires [the Department] to perform certain administrative tasks."). Under section 112.043, the Commission must generally (1) provide administrative support services, facilities, and equipment; and (2) apply for and accept grants, gifts, and other funds on behalf of the Office. *See* TEX. HUM. RES. CODE ANN. § 112.043(b) (Vernon 2001). Consistent with this statutory role, the Commission—like its predecessor, the Department—is appropriated funds to provide the necessary support services. *See* General Appropriations Act, 79th Leg., R.S., ch. 1369, art. II-84, 2005 Tex. Gen. Laws 4324, 4509. Thus, while the Office is funded in part with moneys legislatively appropriated to the Commission, because the funds are specifically designated for the support of the Office, the administrative agency has limited control over those funds. *See id.*

Based on a plain reading of the Act as a whole, we conclude that the Office is not subject to the Commission's fiscal control and oversight. *See* TEX. HUM. RES. CODE ANN. §§ 112.041–.051(Vernon 2001); *see also City of Sunset Valley*, 146 S.W.3d at 642.

## 2.    Soliciting private grants

You next ask whether the Office is authorized to solicit funds such as private grant moneys. Request Letter, *supra* note 1, at 1. You explain that the Commission's directives to accept, deposit, and disburse gifts and grants "create some overlap with the pre-existing fundraising functions vested in the [Office]" and "[t]here is . . . some potential for confusion." *Id.* at 3.

The Office is expressly authorized to solicit private and public grants and donations. *See* TEX. HUM. RES. CODE ANN. §§ 112.044(5), .046(b), .048(c)(3), .050(a) (Vernon 2001). It may "solicit, receive, and spend grants and donations from public, private, state, and federal sources." *Id.* § 112.044(5). Additionally, the Office's board of advisors serving on tasks forces may "solicit donations and grants." *Id.* § 112.046(b). The Office-established task forces may "arrange for funds" through "grants and gifts from private persons and consumer and advocacy organizations" and "foundation support." *Id.* § 112.048(c)(3). Finally, the executive committee "may apply for and distribute private, state, and federal funds to implement prevention policies set by the executive committee." *Id.* § 112.050(a).

The Commission's later enacted authority to solicit private or public grants on behalf of the Office and accept and disburse funds for the Office did not amend or repeal the Office's authority. *See* Act of May 28, 1989, 71st Leg., R.S., ch. 1209, § 1, 1989 Tex. Gen. Laws 4912, 4912; Act of May 22, 1999, 76th Leg., R.S., ch. 751, § 1, 1999 Tex. Gen. Laws 3359, 3360; TEX. HUM. RES.

---

[3] A reference to the Department in the law relating to transferred administrative support services is a reference to the Commission. *See* Act of June 2, 2003, 78th Leg., R.S., ch. 198, § 1.18(d), 2003 Tex. Gen. Laws 611, 641.

CODE ANN. § 112.043(a) (Vernon 2001). The later enacted provision did not expressly amend or repeal the Office's authority to solicit funds. Thus, "[i]f repeal was effected it was by implication only, and repeal by implication is not favored." *Standard v. Sadler*, 383 S.W.2d 391, 395 (Tex. 1964). In the absence of an express repeal, an old and a new statute that are not positively repugnant will be construed as to give effect to both. *Id.* Section 112.043 authorizes the Commission to "accept, deposit, and disburse money *made available to the* [Office]." TEX. HUM. RES. CODE ANN. § 112.043(b)(2) (Vernon 2001) (emphasis added). It also authorizes the Commission to "accept gifts and grants *on behalf of the* [Office] from any public or private entity." *Id.* § 112.043(b)(3) (emphasis added). There is no conflict or "positive repugnance" between sections 112.044(5), 112.046(b), 112.048(c)(3), and 112.050(a) on the one hand, and section 112.043 on the other. *Compare id.* §§ 112.044(5), .046(b), .048(c)(3), .050(a) (Vernon 2001), *with id.* § 112.043(b)(2), (3).

In answer to your second question, we conclude that the Office is authorized to solicit funds such as private grant moneys. *See id.* §§ 112.044(5), .046(b), .048(c)(3), .050(a).

### 3.   Spending funds without specific legislative appropriation

Finally, you ask whether the Office is authorized by article XVI, section 6(b) of the Texas Constitution to spend public and private grants and donations without specific legislative appropriation. *See* Request Letter, *supra* note 1, at 1.

Generally, with certain exceptions not relevant here, gifts, grants, donations, and other funds collected or received by a state agency under law must be deposited in the state treasury. *See* TEX. GOV'T CODE ANN. § 404.093 (Vernon 2005) (application and exceptions); *id.* § 404.094(a) (funds, including grants and donations "collected or received by a state agency under law shall be deposited in the treasury"). Funds in the state treasury may not be expended without a legislative appropriation. *See* TEX. CONST. art. VIII, § 6 ("No money shall be drawn from the Treasury but in pursuance of specific appropriations made by law . . . .").

Article XVI, section 6(b) of the Texas Constitution, however, permits state agencies responsible for providing services to physically or mentally disabled persons to spend federal and private grant moneys without legislative appropriation. Section 6(b) provides that:

> (b) State agencies *charged with the responsibility of providing services to those who are blind, crippled, or otherwise physically or mentally handicapped* may accept money from private or federal sources, designated by the private or federal source as money to be used *in and establishing and equipping facilities* for assisting those who are blind, crippled, or otherwise physically or mentally handicapped *in becoming gainfully employed, in rehabilitating and restoring the handicapped, and in providing other services determined by the state agency to be essential for the better care and treatment of the handicapped.* Money accepted under this subsection is state money. . . . The money may not be expended for any purpose

> other than the purpose for which it was given. *Notwithstanding any*
> *other provision of this Constitution, the state agencies may expend*
> *money accepted under this subsection without the necessity of an*
> *appropriation, unless the Legislature, by law, requires that the money*
> *be expended only on appropriation. . . .*

TEX. CONST. art. XVI, § 6(b) (emphasis added).

But article XVI, section 6(b)'s application is limited. When interpreting the state constitution, we must look at its literal text and give effect to its plain language. *See Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 355 (Tex. 2000); *Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997). We must "strive to give constitutional provisions the effect their makers and adopters intended." *Stringer*, 23 S.W.3d at 355; *see also City of El Paso v. El Paso Cmty. Coll. Dist.*, 729 S.W.2d 296, 298 (Tex. 1986). And we must strive to avoid a construction that renders any provision meaningless or inoperative. *See Stringer*, 23 S.W.3d at 355; *Hanson v. Jordan*, 198 S.W.2d 262, 263 (Tex. 1946). By its literal terms, section 6(b) applies to state agencies responsible for providing services to physically and mentally disabled persons; and to federal and private funds received by these agencies that are used "in and establishing and equipping facilities" for assisting physically and mentally disabled persons and providing other essential services. *See* TEX. CONST. art. XVI, § 6(b); *see also* 2 GEORGE D. BRADEN *et al.*, THE CONSTITUTION OF THE STATE OF TEXAS: AN ANNOTATED AND COMPARATIVE ANALYSIS 726 (1977) ("Subsection (b) was added to comply with the requirements of the federal Vocational Rehabilitation Act of 1964. That act made federal funds available to match private contributions but required depositing the funds with the state's vocational rehabilitation agency.").

The Office is responsible for coordinating efforts to prevent developmental disabilities rather than providing services to disabled persons. *See* TEX. HUM. RES. CODE ANN. §§ 112.041, .044 (Vernon 2001). The Office's statutory purpose is to "minimize the economic and human losses in Texas caused by preventable disabilities." *Id.* § 112.041(a). And its duties relate to coordinating preventive activities: providing information about the preventability of developmental disabilities; coordinating and promoting prevention activities of state and local agencies and private organizations; and monitoring and assessing prevention programs. *See id.* § 112.044; *see also* SENATE COMM. ON PUBLIC HEALTH, BILL ANALYSIS, Tex. S.B. 1527, 71st Leg., R.S. (1989) ("The steering committee recommended [that] the . . . Legislature establish an Office for the Prevention of Developmental Disabilities to facilitate the development, coordination, and delivery of targeted prevention programs."); SUNSET ADVISORY COMMISSION, STAFF REPORT, TEXAS OFFICE FOR THE PREVENTION OF DEVELOPMENTAL DISABILITIES at 156 (Sept. 1998) ("Unlike other disabilities agencies, such as the Texas Rehabilitation Commission and the [the Department], which provide services to people with disabilities, [the Office's] mission is more closely tied to public health, specifically injury and disability *prevention*.").

Because the Office does not provide services to physically or mentally disabled persons, we conclude that it is not authorized by article XVI, section 6(b) of the Texas Constitution to spend private and public grants and donations without specific legislative appropriation. *See* TEX. CONST. art. XVI, § 6(b); TEX. HUM. RES. CODE ANN. §§ 112.041, .044 (Vernon 2001).

## S U M M A R Y

   The Office for the Prevention of Developmental Disabilities is not subject to the fiscal control and oversight of the Health and Human Services Commission. The Office is expressly authorized to solicit funds such as private grant funds. Because the Office does not provide services to physically or mentally disabled persons, it is not authorized by article XVI, section 6(b) of the Texas Constitution to spend private and public grants and donations without specific legislative appropriation.

       Very truly yours,

       GREG ABBOTT
       Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee