

## ATTORNEY GENERAL OF TEXAS

### GREG ABBOTT

February 13, 2007

The Honorable Geraldine "Tincy" Miller
Chair, State Board of Education
1701 North Congress Avenue
Austin, Texas 78701-1494

Opinion No. GA-0516

Re: Appropriate calculation of the market value of
the permanent school fund for making distributions
to the available school fund  (RQ-0448-GA)

Dear Ms. Miller:

Under article VII, section 5 of the Texas Constitution, the State Board of Education (the "Board") manages and invests the permanent school fund (the "PSF"), which consists of land and revenues dedicated to the support of public schools. *See* TEX. CONST. art. VII, § 5(a), (f); TEX. EDUC. CODE ANN. §§ 7.102(c)(31), 43.003, 43.006 (Vernon 2006). Article VII, section 5 directs that "distributions made . . . from the total return on all investment assets of the [PSF]" be deposited in the available school fund (the "ASF"), which fund is "applied annually to the support of the public free schools." TEX. CONST. art. VII, § 5(a), (c).[1] The Board has authority to determine the amount to be distributed from the PSF to the ASF, but the distribution is limited to "not more than six percent of the average of the market value of the [PSF], excluding real property . . . managed, sold, or acquired under Section 4 of this article, on the last day of each of the 16 state fiscal quarters preceding the regular session of the legislature that begins before that state fiscal biennium." TEX. CONST. art. VII, § 5(a)(1); *see also id.* art. VII, § 5(a)(2) (providing additional restriction that over the preceding ten-year period, the distribution may not exceed the total return over that ten-year period). You ask three questions regarding the interpretation of this constitutional limitation:

> 1.    May the . . . Board administratively adopt the accounting methodology to determine the "market value" of the PSF? If so, what limits (if any) exist on that discretion?
>
> 2.    Does Article [VII], Section 5(a)(1) of the Texas Constitution require funds held by the [General Land Office] in the Treasury for

---

[1]This provision was amended in 2003 to provide for a "total return" investment management strategy that allows a portion of the market value increases of the PSF to be distributed and included in the ASF. *See* Tex. H.R.J. Res. 68, 78th Leg., R.S., § 2, 2003 Tex. Gen. Laws 6236, 6237; TEXAS LEGISLATIVE COUNCIL, ANALYSES OF PROPOSED CONSTITUTIONAL AMENDMENTS, SEPTEMBER 13, 2003 ELECTION, at 57–58 (July 2003) (stating that the ASF, "rather than consisting . . . of the interest and income on PSF assets, would [under the amendment] consist of a portion of the 'total return' on investment assets of the PSF—in other words, a portion of the market value increases, or capital gains, of stocks and bonds held by the PSF"), *available at* http://www.tlc.state.tx.us/pubsconamend/analyses03/analyses03.pdf (last visited Feb. 5, 2007).

the purchase of additional real property that will be managed, sold or acquired under Article VII, Section 4 to be included in the market value of the PSF for purposes of that section?

3.    Does Article [VII], Section 5(a)(1) of the Texas Constitution require the market value of the PSF be determined in the same manner as the total value of the PSF in its audited financial statements?[2]

## I.    Accounting Methodology

Because your first and third questions ask about the appropriate accounting methodology to determine the PSF's market value, we consider them together. *See* Request Letter, *supra* note 2, at 3. Article VII, section 5 is silent on the appropriate accounting methodology for determining the PSF's market value for the purposes of calculating the ASF distribution. By its terms, neither article VII, section 5(a)(1) directing the calculation and distribution to the ASF nor another provision in section 5 authorizes or requires the Board to use a particular accounting methodology or requires that the PSF's market value be determined under section 5(a)(1) in the same manner as the total value of the PSF in its audited financial statements. TEX. CONST. art. VII, § 5(a)(1); *see also Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 355 (Tex. 2000) (citing *Republican Party of Tex. v. Dietz*, 940 S.W.2d 86, 89 (Tex. 1997)) (stating that when interpreting the state constitution, we must look at its literal text and give effect to its plain language).

But we must also consider chapter 43 of the Education Code, which regulates investment of the PSF and use of the ASF. *See* TEX. EDUC. CODE ANN. ch. 43 (Vernon 2006); *see also id.* § 7.102(c)(31) (authorizing the Board to invest the PSF "within the limits of the authority granted by Section 5, Article VII, Texas Constitution, and Chapter 43"). Section 43.020 of the Education Code provides that "[a]ll interest and dividends accruing from the investments of the [PSF] shall be deposited to the credit of the [ASF] in accordance with the accrual basis of accounting"[3] and that "[f]unds recognized under this section are considered part of the [ASF] and may be appropriated as provided by" article VII, section 5. *Id.* § 43.020; *see also id.* § 43.001(b) (as amended by Act of June 1, 2003, 78th Leg., ch. 201, § 36, 2003 Tex. Gen. Laws 812, 823) (stating that the ASF consists of "the interest and dividends arising from any securities or funds belonging to the [PSF], as determined in accordance with the accrual basis of accounting"). Section 43.020 plainly requires investment income to be recognized as part of the ASF and deposited to the ASF using an accrual basis of

---

[2]*See* Letter from Honorable Geraldine "Tincy" Miller, Chair, State Board of Education, to Honorable Greg Abbott, Attorney General of Texas, at 3 (Feb. 9, 2006) (on file with the Opinion Committee, *also available at* http://www.oag.state.tx.us) [hereinafter Request Letter].

[3]In the federal income tax context, "[k]eeping accounts and making returns on the accrual basis, as distinguished from the cash basis, import that it is the right to receive and not the actual receipt that determines the inclusion of the amount in gross income." *Spring City Foundry Co. v. Comm'r of Internal Revenue*, 292 U.S. 182, 184 (1934). More generally, the accrual accounting method "records entries of debits and credits when the liability arises, rather than when the income or expense is received or disbursed" in contrast to the cash-basis accounting method "that considers only cash actually received as income and cash actually paid out as an expense." BLACK'S LAW DICTIONARY 20 (7th ed. 1999).

accounting. *Id.* § 43.020; *see also* FISCAL NOTE, Tex. H.B. 3459, 78th Leg., R.S. (2003) ("Sections 36 [Education Code section 43.001(b)] and 37 [section 43.020] move the accounting for the [PSF] from a cash to an accrual basis by redefining the fund to include unrealized interest and dividends.")[4]; *Lenz v. Lenz*, 79 S.W.3d 10, 19 (Tex. 2002) (stating that the goal of statutory construction is to effect the legislative intent, and courts accomplish this by looking to the plain and common meaning of the words and terms the Legislature uses). Under article VII, section 5(a)(1), the market value of the PSF determines the ASF distribution. *See* TEX. CONST. art. VII, § 5(a)(1). Using the cash accounting method to calculate the PSF market value under section 5(a)(1) would result in the exclusion from the PSF's value of amounts that section 43.020 of the Education Code requires be included in the PSF. In response to your first and third questions, because section 43.020 of the Education Code requires the Board to use the accrual accounting method to determine the ASF distribution, we conclude that the Board does not have the discretion to adopt another accounting method to determine the PSF's market value for calculating the ASF distribution under article VII, section 5(a)(1).[5]

## II.    General Land Office Held Funds

In your second question, you ask whether article VII, section 5(a)(1) of the Texas Constitution requires the PSF's market value to include funds held by the General Land Office in the state treasury for the purchase of additional real property. *See* Request Letter, *supra* note 2, at 3. Article VII, section 5 limits the annual total distribution from the PSF to the ASF to "an amount that is not more than six percent of the average of the market value of the [PSF], *excluding real property belonging to the fund that is managed, sold, or acquired under Section 4 of this article.*" TEX. CONST. art. VII, § 5(a)(1) (emphasis added). Article VII, section 4 authorizes the sale of PSF land as prescribed by the Legislature and provides that the sale proceeds be used to acquire other land or be invested in authorized securities by the Comptroller of Public Accounts as directed by the Board. *See id.* art. VII, § 4. As prescribed by the Legislature, the article VII, section 4 lands

---

[4]Section 43.020 was adopted by the Seventy-eighth Legislature, which also approved the 2003 amendments to article VII, section 5 providing for the "total return" investment strategy for the PSF and distribution to the ASF of a portion of the PSF's market value. See Tex. H.R.J. Res. 68, 78th Leg., R.S., § 2, 2003 Tex. Gen. Laws 6236, 6237; Act of June 1, 2003, 78th Leg., R.S., ch. 201, § 37, 2003 Tex. Gen. Laws 812, 813; FISCAL NOTE, Tex. H.B. 3459, 78th Leg., R.S. (2003) ("Moving the accounting for certain assets of the [PFS] from cash to accrual would result in an estimated one-time ASF revenue increase of $100 million, and a corresponding savings to general revenue of $90 million . . . . [A] move to total return for the PSF would significantly reduce the revenue gain.").

[5]It has been suggested that section 43.020 may be ineffective because it limits the broad discretion granted to the Board by article VII, section 5(f) of the Texas Constitution. See Telephone Conversation with David Anderson, General Counsel, Texas Education Agency (May 12, 2006). By its terms, article VII, section 5(f) authorizes the Board to buy, hold, and sell investments in the same manner as would a prudent person. See TEX. CONST. art. VII, § 5(f); *see also Stringer*, 23 S.W.3d at 355 (stating that when interpreting the state constitution, we must look at its literal text and give effect to its plain language). Section 5(f) grants the Board broad investment authority. See TEX. CONST. art. VII, § 5(f); *see also* Tex. Att'y Gen. Op. No. DM-175 (1992) at 4 (stating that "[a]rticle VII, section (5)([f]) expressly gives the . . . Board . . . the authority to make *any kind* of prudent investment in managing the assets of the" PSF). But section 5(f) does not address calculation of the PSF's market value or the accounting methodology to be used in making that calculation for purposes of distributions to the ASF. Thus, section 43.020 does not limit the Board's discretion under article VII, section 5(f).

are managed by the School Land Board[6] and the Commissioner of the General Land Office (collectively, the "Land Office"). TEX. NAT. RES. CODE ANN. § 51.011 (Vernon Supp. 2006). You note that "[a]t any time, a large portion of these funds [held by the Land Office] may be encumbered for the settlement of [Land Office] real estate transactions at a future date." *See* Request Letter, *supra* note 2, at 3. And in 2004, the Board excluded from the PSF's market value these funds based on the Board's understanding that "investment assets" as used in article VII, section 5 referred only to the Board-managed PSF assets. *See id.*

In interpreting article VII, section 5(a)(1), we consider the amendment's literal text and the common meaning of "real property." *See Stringer*, 23 S.W.3d at 355 (stating that when interpreting the state constitution, we must look at its literal text and give effect to its plain language); *Spradlin v. Jim Walter Homes, Inc.*, 34 S.W.3d 578, 580 (Tex. 2000) (stating that presuming the constitutional language is carefully selected, its words must be construed as they are generally understood). The well-established meaning of the term "real property" is "land, and generally whatever is erected or growing upon it or affixed to land." *San Antonio Area Found. v. Lang*, 35 S.W.3d 636, 640 (Tex. 2000) (quoting *Chastain v. Koonce*, 700 S.W.2d 579, 584 (Tex. 1985) (Gonzalez, J., concurring)).

But "real property" is followed by the additional language "belonging to the fund that is managed, sold, or acquired under Section 4 of this article" to which we must give meaning and purpose. *See* TEX. CONST. art. VII, § 5(a)(1); *see also Spradlin*, 34 S.W.3d at 580 (stating that consistent with fundamental principles of constitutional construction, "we give effect to all the words of a statute and do not treat any statutory language as surplusage, if possible"); *Hanson v. Jordan*, 198 S.W.2d 262, 263 (Tex. 1946) (stating that courts "should avoid a construction that renders any provision meaningless" and "must lean in favor of a construction which will render every word operative"). Reading section 5(a)(1) to exclude only real property from the PSF's market value would render "real property . . . sold . . . under Section 4 of this article" superfluous because, under this reading, excluding from the PSF's market value "real property sold" is meaningless—there is no real property belonging to the fund to exclude once it is sold. We cannot presume that the Legislature intended this redundancy. *See Spradlin*, 34 S.W.3d at 580 (stating that we must give effect to all words of a statute and not treat any statutory language as surplusage if possible). Presuming that the Legislature intended all the language it used to be effective, "real property sold" can only mean the proceeds of the sale, which must thus be excluded from the market value of the PSF for the purposes of calculating the ASF.

Construing real property sold to mean sale proceeds that are thus excluded from the PSF's market value is consistent with the other provisions of article VII, section 5 and article VII, section 4. *See Doody v. Ameriquest Mortgage Co.*, 49 S.W.3d 342, 344 (Tex. 2001) (stating that constitutional provisions and amendments that relate to the same subject matter are construed together and considered in light of each other). Section 5(a) first describes in general terms the PSF component of the ASF: "The [ASF] consists of the distributions made to it from the *total return on all investment assets* of the [PSF]" and then directs specifically how that distribution is to be

---

[6]*See* TEX. NAT. RES. CODE ANN. §§ 32.011 (creating School Land Board), 32.012 (providing that School Land Board is composed of the Commissioner of the General Land Office and two citizens, one appointed by the Governor and the other by the Attorney General with the advice and consent of the Senate) (Vernon 2001).

calculated: no more than six percent of the PSF's average market value excluding real property managed under article VII, section 4. *See* TEX. CONST. art. VII, § 5(a)(1) (emphasis added). And section 5(a)(2) provides that "over the 10-year period consisting of the current state fiscal year and the nine preceding state fiscal years," the AFS distribution, "may not exceed the total return on all *investment assets* of the [PSF] over the same 10-year period." *Id.* § 5(a)(2) (emphasis added). The meaning of the term "investment assets" in section 5 is revealed by section 5(f), which provides that "in managing *the assets of the* [*PSF*], the [Board] may acquire, . . . sell . . . , or retain . . . any kind of investment" that a prudent person under the prevailing circumstances would acquire or retain. *Id.* § 5(f) (emphasis added). "Investment assets" with respect to which the ASF distribution is calculated and generally addressed by article VII, section 5 are thus the assets subject to the investment control and management of the Board.

Funds held by the Land Office in the state treasury for the purchase of additional real property are simply not under the Board's investment management and control. Under the article VII, section 4 scheme, the Land Office controls and manages the proceeds from the sale of land designated for the purchase of additional lands. *See* TEX. CONST. art. VII, § 4; TEX. NAT. RES. CODE ANN. §§ 51.011, .401, .402, .4021 (Vernon Supp. 2006). Section 4 provides a separate scheme for the ongoing sale of land and purchase of additional land with the sale proceeds as authorized by the Legislature. *See* TEX. CONST. art. VII, § 4. The Legislature has granted the Land Office the "sole and exclusive" authority to manage and control these lands. *See* TEX. NAT. RES. CODE ANN. § 51.011(Vernon Supp. 2006). And the Legislature has given the Land Office two years within which to use the proceeds of the sale of land and proceeds of mineral leases and royalties—held in a "special fund account" of the PSF—to acquire other land or mineral interests in land. *See id.* §§ 51.401(a), (c), .402(a). The Land Office may contract with professional investment managers to invest the designated funds. *See id.* § 51.4021(a). Interest earned on the proceeds during the two-year period is "deposited in the State Treasury to the credit of the" PSF. *See id.* § 51.401(b). But only the proceeds remaining after this two-year period that are not used to purchase land or interest in land (or used for related purposes) must be "deposited . . . to the credit of the" PSF. *See id.* § 51.401(d). Thus for the two-year period, land proceeds are designated for the purchase of additional lands or interests in land by the Land Office and are not "deposited . . . to the credit of the" PSF.

Construing the PSF's market value in section 5(a)(1) to exclude the proceeds of the sale of real property, which is not under the investment and control of the Board, is therefore consistent with the other provisions of article VII, section 5 that deal only with the PSF assets under the investment management and control of the Board.

Favoring a construction that gives effect to all the article VII, section 5(a)(1) language and reading it in light of related provisions dictates construing "real property . . . managed, sold, or acquired under Section 4 of this article" to include proceeds from the sale of land held in a "special fund account" of the PSF to acquire other land or mineral interests in land. Accordingly, in answer to your second question, we conclude that article VII, section 5(a)(1) of the Texas Constitution requires the PSF's market value to exclude both real property held by the PSF and funds held by the Land Office in the state treasury for the purchase of additional real property.

## S U M M A R Y

Because section 43.020 of the Education Code requires the State Board of Education to use the accrual accounting method to determine distributions to the available school fund, the Board may not administratively adopt another accounting method to determine the permanent school fund's market value to calculate the available school fund distribution under Texas Constitution article VII, section 5(a)(1). Article VII, section 5(a)(1) requires the permanent school fund's market value to exclude funds held by the School Land Board in the state treasury for purchasing additional real property.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

KENT C. SULLIVAN
First Assistant Attorney General

ELLEN L. WITT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Sheela Rai
Assistant Attorney General, Opinion Committee