

# KEN PAXTON

ATTORNEY GENERAL OF TEXAS

February 26, 2018

The Honorable Roland Gutierrez
Chair, Committee on Defense and
   Veterans' Affairs
Texas House of Representatives
Post Office Box 2910
Austin, Texas 78768-2910

Opinion No. KP-0183

Re: Whether veterans with Veterans Affairs home loans may execute a cash-out refinance loan on their homestead property (RQ-0176-KP)

Dear Representative Gutierrez:

You seek clarification about whether Texas veterans may execute a U.S. Department of Veterans Affairs cash-out refinance loan on their homestead property. Request Letter at 1. A "'Texas Cash Out' loan is a home equity loan governed by Article XVI, Section 50(a)(6) of the Texas Constitution."[1] *Lawrence v. Fed. Home Loan Mortg. Corp.*, 808 F.3d 670, 672 n.3 (5th Cir. 2015). With your request you include a letter from the Texas Department of Savings and Mortgage Lending concluding that "veterans having VA loans are not able to obtain a cash-out refinance (equity loan) in Texas."[2]

Texas Constitution article XVI, section 50 protects the homestead from forced sale for payment of all debts other than those specifically excepted by the constitution. TEX. CONST. art. XVI, § 50(a). For most of its long history, article XVI, section 50 excepted only liens securing purchase money, taxes, or home improvement debts. *See Patton v. Porterfield*, 411 S.W.3d 147, 156 (Tex. App.—Dallas 2013, pet. denied). Pursuant to a 1997 constitutional amendment, the provision now permits home equity loans. *See id.*; TEX. CONST. art. XVI, § 50(a)(6) (protecting a homestead "from forced sale, for the payment of all debts except for . . . an extension of credit" that meets specified requirements); *see also Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 354 (Tex. 2000) (discussing 1997 amendment). "The amendment allows homeowners who have either entirely repaid their home loans or who have accumulated equity in their homestead over and above existing liens to apply for a loan against that equity." *Stringer*, 23 S.W.3d at 354; *see also*

---

[1] "A 'cash out' loan is a refinancing of an existing mortgage loan, where a new mortgage loan for an amount greater than the amount owed on the existing mortgage loan replaces the existing loan, and the borrower takes the difference between the two loans in cash, essentially converting some of the equity built up in the home into cash." *Warfield v. Lash*, No. 0252 Sept. Term 2015, 2016 WL 1122247, at *1 n.1 (Md. Ct. Spec. App. Mar. 22, 2016).

[2] *See* Letter from Honorable Roland Gutierrez, Chair, House Comm. on Def. & Veterans Affairs, to Honorable Ken Paxton, Tex. Att'y Gen. (Aug. 22, 2017) and attached letter from Tex. Dep't of Savs. & Mortg. Lending at 2 (Jan. 20, 2017), https://texasattorneygeneral.gov/opinion/requests-for-opinion-rqs ("Request Letter" and "Attachment," respectively).

*LaSalle Bank Nat'l Ass'n v. White*, 246 S.W.3d 616, 618 (Tex. 2007) (Home-equity loans "permit homeowners to use the equity in their home as collateral to refinance the terms of prior debt and secure additional loans at rates more favorable than those for consumer loans.").

Yet, in keeping with the intent to protect the homestead, article XVI, subsection 50(a)(6) places many restrictions on a home equity loan. *See* TEX. CONST. art. XVI, § 50(a)(6)(A)–(Q); *see also Patton*, 411 S.W.3d at 156–57 ("Article XVI, section 50(a)(6) . . . establishes the terms and conditions a home-equity lender must satisfy to make a valid loan."). Relevant to your question, subsection 50(a)(6) limits a home equity loan to an aggregate principal amount that "does not exceed 80 percent of the fair market value of the homestead." TEX. CONST. art. XVI, § 50(a)(6)(B). It provides that the extension of credit must be "without recourse for personal liability against each owner." *Id.* § 50(a)(6)(C). Subsection 50(a)(6) also requires that the extension of credit be "secured by a lien that may be foreclosed upon only by a court order." *Id.* § 50(a)(6)(D). The subsection limits the fees "necessary to originate, evaluate, maintain, record, insure, or service the extension of credit" to three percent of the principal.[3] *Id.* § 50(a)(6)(E). Further, subsection 50(a)(6) provides that the extension of credit cannot be "secured by any additional real or personal property other than the homestead." *Id.* § 50(a)(6)(H).

The letter accompanying your request letter states that the provisions set out above conflict with aspects of a U.S. Department of Veterans Affairs cash-out refinance loan. *See* Attachment at 1–2. The letter recites that a U.S. Department of Veterans Affairs cash-out refinance loan allows a maximum lending limit which is above the 80% limit allowed under subsection 50(a)(6)(B). *See id.* at 2; 38 C.F.R. § 36.4306(a)(1) (providing that amount of a refinancing loan "may not exceed an amount equal to 90 percent" of the dwelling). The letter states that veterans using the U.S. Department of Veterans Affairs home loan guaranty benefit must pay a funding fee, which can vary from .5% to 3.3% while subsection 50(a)(6)(E) limits fees and charges to no more than 3%. *See* Attachment at 2; *see* TEX. CONST. art. XVI, § 50(a)(6)(E); 38 U.S.C. § 3729(a)–(c) (providing table for determining amount of loan fees and providing for waiver of fees); 38 C.F.R. §§ 36.4254 (authorizing certain fees and charges), 36.4313(d) (providing schedule of permissible charges and fees). The letter also asserts that a U.S. Department of Veterans Affairs cash-out refinance loan is prohibited by subsection 50(a)(6)'s provisions regarding personal liability, homestead as sole collateral, and foreclosure only by court order. *See* Attachment at 2 (citing TEX. CONST. art. XVI, § 50(a)(6)(C), (D), (H)).

At its core the U.S. Department of Veterans Affairs loan benefit is a guaranty program. It assists eligible veterans by guarantying home loans made to them by private lenders. *See* 38 U.S.C. § 3710 (guarantying loan for purchase of home); *see also id.* §§ 3701–3736. It operates by inducing private lenders to loan eligible veterans 100 percent of a home's purchase price by guarantying a certain percentage of the loan. *See id.* § 3703(a)(1)(A). Upon a default by the veteran, the U.S. Department of Veterans Affairs pays the private lender the amount of the guaranty and becomes subrogated to the lender for that amount. *Id.* § 3732(a)(1). Alternatively, the U.S. Department of Veterans Affairs can purchase the property by paying the lender the outstanding balance on the loan and receiving an assignment of the loan and security. *Id.* § 3732(2)(A).

---

[3]A recently approved constitutional amendment, would among other things, reduce this percentage to two percent but would exclude enumerated costs from being considered a fee. *See* TEX. CONST. art. XVI, § 50(a)(6)(E).

Payment of the guaranty or purchase of the property from the lender on behalf of the veteran constitutes "a debt owing to the United States by such veteran." 38 C.F.R. § 36.4326(e).

You suggest that the terms of a U.S. Department of Veterans Affairs cash-out refinance loan could be conformed to satisfy many of subsection 50's requirements. Request Letter at 1. As an example, you state that a veteran with 50% equity in his or her home wanting to do a 30% cash-out would be within the 80% limit of subsection 50(a)(6). *Id.* While many terms of a U.S. Department of Veterans Affairs cash-out refinance loan might be written to comply with the provisions of subsection 50(a)(6), the fact that the U.S. Department of Veterans Affairs provides a guaranty on the loan and thus serves as collateral other than the homestead precludes a U.S. Department of Veterans Affairs cash-out refinance loan in Texas. *See* TEX. CONST. art. XVI, § 50(a)(6)(H).

Shortly after the 1997 amendment allowing home-equity lending, four state agencies involved in such lending offered a Regulatory Commentary on the requirements of subsection 50(a)(6).[4] *See* REGULATORY COMMENTARY ON EQUITY LENDING PROCEDURES (Oct. 7, 1998) ("REGULATORY COMMENTARY");[5] *see also Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 786–87 (5th Cir. 2010) (recognizing that the Texas Supreme Court considers this commentary to be persuasive (citing *Stringer*, 23 S.W.3d at 357)). The Regulatory Commentary determines that a "guaranty or the obligation of a cosigner or surety is considered additional collateral, and would not be permissible in connection with an equity loan." REGULATORY COMMENTARY at 6. The Texas Finance Commission and the Credit Union Commission later jointly promulgated rules similar to the interpretation set out in the Regulatory Commentary.[6] The Texas Administrative Code provides that "[a] guaranty or surety of an equity loan is not permitted. A guaranty or surety is considered additional property for purposes of Section 50(a)(6)(H)." 7 TEX. ADMIN. CODE § 153.8(2) (2017) (Joint Fin. Regulatory Agencies, Sec. of the Equity Loan: Subsection 50(a)(6)(H)). Thus, because a U.S. Department of Veterans Affairs loan guaranty is additional collateral contrary to article XVI, subsection 50(a)(6)(H), the Texas Constitution prohibits a U.S. Department of Veterans Affairs cash-out refinance loan.[7]

---

[4]"Originally, no Texas administrative agency was empowered with rule-making authority over the amendments. However, shortly after the amendment was enacted, four Texas agencies charged with regulating entities that made home equity loans issued an advisory publication entitled the Regulatory Commentary on Equity Lending Procedures." *Cerda v. 2004-EQR1 L.L.C.*, 612 F.3d 781, 786 (5th Cir. 2010) (citing *Stringer*, 23 S.W.3d at 357).

[5]*Available at* http://occc.texas.gov/sites/default/files/uploads/disclosures/b98-2-home-equity-regulatory-commentary.pdf (last visited Dec. 14, 2017).

[6]A 2003 amendment authorized the Legislature to give state agencies authority to interpret provisions of article XVI, subsection 50(a). TEX. CONST. art. XVI, § 50(u); *see also* TEX. FIN. CODE §§ 11.308 (authorizing the Texas Finance Commission to interpret subsection 50(a)(5)–(7)), 15.413 (providing same authorization for Texas Credit Union Commission); 7 TEX. ADMIN. CODE § 151.1(a) (Joint Fin. Regulatory Agencies, Application for Interpretation).

[7]Subsection 50(a)(6) governs home equity loans and does not apply to a traditional U.S. Department of Veterans Affairs purchase money mortgage or a refinance loan.

**S U M M A R Y**

Because of the guaranty by the federal government, which is additional collateral, Texas Constitution, article XVI, subsection 50(a)(6)(H) prohibits a U.S. Department of Veterans Affairs cash-out refinance loan.

Very truly yours,

KEN PAXTON
Attorney General of Texas

JEFFREY C. MATEER
First Assistant Attorney General

BRANTLEY STARR
Deputy First Assistant Attorney General

VIRGINIA K. HOELSCHER
Chair, Opinion Committee

CHARLOTTE M. HARPER
Assistant Attorney General, Opinion Committee