IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

———————————

No. 99-11404

———————————

JAMES S. DOODY; PAUL D. CARRINGTON,

                                    Plaintiffs-Appellants,

                        versus

AMERIQUEST MORTGAGE COMPANY,

                                    Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Northern District of Texas

———————————

February 13, 2001

Before HIGGINBOTHAM, WIENER, and DENNIS, Circuit Judges.

PER CURIAM:

CERTIFICATE FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH

    CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT TO THE TEXAS

    CONSTITUTION, ART. 5, § 3-C AND RULE 58 OF THE TEXAS RULES OF

                    APPELLATE PROCEDURE

TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:

## I. STYLE OF THE CASE

The style of the case in which certification is made is James S. Doody, Paul D. Carrington, Plaintiffs-Appellants versus Ameriquest Mortgage Company, Defendant-Appellee, Case No. 99-11404, in the United States Court of Appeals for the Fifth Circuit, on appeal from the United States District Court for the Northern District of Texas. This case involves a determinative question of state law, and jurisdiction of the case in the federal courts is based solely on diversity of citizenship.

## II. STATEMENT OF THE CASE

James S. Doody and Paul D. Carrington secured a loan from Ameriquest Mortgage Company in January of 1998. The loan was for $45,500 and was secured by their homestead.

Home equity lending was recently authorized in Texas by section 50 of Article XVI of the Texas Constitution. Section 50 imposes a number of requirements that home equity loans must satisfy. Those that appear principally relevant to this case are:

1. The fee cap provision, section 50(a)(6)(E), which mandates that "fees . . . necessary to originate, evaluate, maintain,

record, insure, or service the extension of credit" may not exceed three percent of the principal.[1]

2.  The forfeiture provision, section 50(a)(6)(Q)(x), which mandates that "[t]he lender . . . shall forfeit all principal and interest of the extension of credit if the lender . . . fails to comply with the lender's . . . obligations under the extension of credit within a reasonable time after the lender . . . is notified by the borrower of the lender's failure to comply."[2]

3.  The voiding provision, section 50(c), which mandates that "[n]o mortgage, trust deed, or other lien on the homestead shall ever be valid unless it secures a debt described by this section. . . ."[3]

The loan taken out by Doody and Carrington had closing costs of $2,006.88, which was approximately 4.4 percent of the loan amount.  In April of 1998, Ameriquest realized that such closing costs violated section 50(a)(6)(E), and refunded $641.88 to Doody

---

[1] Texas Const., art. XVI, § 50(a)(6)(E) (2000).

[2] *Id.* § 50(a)(6)(Q)(x).

[3] *Id.* § 50(c).

and Carrington, reducing the fees to $1,365.00.  That amount is three percent of the principal.

The contract Doody and Carrington signed with Ameriquest contained a waiver provision.  That provision stated that if Ameriquest discovered that it had overcharged the borrowers, it would refund that overcharge and "Borrower's acceptance of any such refund will constitute a waiver of any right of action Borrower might have arising out of such overcharge."  Doody and Carrington accepted their refunds in this case.

Doody and Carrington have sued in the United States District Court for the Northern District of Texas, seeking declaratory relief.  The district court dismissed, holding that the controversy was not ripe because plaintiffs had not failed to pay on their mortgage, and Ameriquest had not yet begun foreclosure proceedings. In this respect, the district court erred.  The Declaratory Judgment Act exists to allow litigants to determine an actual controversy such as this one before the dispute grows into a contract violation or a foreclosure proceeding.[4]

We are required, however, to affirm the district court's judgment if it was correct, even if for a reason not articulated.[5]

---

[4] *See, e.g., Rowan Companies, Inc. v. Griffin*, 876 F.2d 26, 28 (5th Cir. 1989)("The declaratory judgment vehicle also is intended to provide a means of settling an actual controversy before it ripens into a . . . breach of a contractual duty.").

[5] *See United States v. Real Prop.*, 123 F.3d 312, 313 (5th Cir. 1997) ("It is well-settled, however, that we will not reverse a judgment of the district court if it can be affirmed on any ground,

4

Ameriquest advances two reasons why dismissal might be appropriate. Both raise issues of Texas law that are of first impression and therefore most properly addressed to the Supreme Court of Texas and the Honorable Justices thereof.

I

Before turning to these issues, we first reject plaintiff's contention regarding hazard insurance. Ameriquest required Doody and Carrington to take out hazard insurance on the mortgaged property. No hazard insurance premiums were refunded. If the premiums paid for that insurance count towards the three percent cap, the cap was amply exceeded and the loan and lien are both therefore invalid. We hold, however, that hazard insurance does not constitute "fees . . . necessary to originate . . . the extension of credit." This is clear from the language of section 50. The Supreme Court of Texas has held, in interpreting section 50, that "[w]e avoid a construction that renders any provision meaningless or inoperative."[6] Section 50 states that the lender may not "require the owner" to pay fees "to any person that are necessary to originate" the loan.[7] Hazard insurance is only "necessary to originate" this loan in the sense that the lender

_____

regardless of whether the district court articulated the ground.").

[6] *Stringer v. Cendant Mortgage Corp.*, 23 S.W.3d 353, 355 (Tex. 2000).

[7] Texas Const. art. XVI, § 50(a)(6)(E).

5

required it. Plaintiff's construction would render "necessary to originate" redundant and therefore meaningless and inoperative.

II

Having dispensed with the hazard insurance question, the case then turns on two questions about the interaction between the invalidity provision and the forfeiture provision of section 50. The forfeiture provision allows a lender to cure noncompliance with the terms of the loan, thereby avoiding forfeiture. Ameriquest argues that such a cure also allows the lender to avoid invalidity of the loan under section 50(c). Thus, Ameriquest argues, since it refunded the overcharged amount, neither section 50(a)(6)(Q)(x) nor section 50(c) invalidate its lien. Doody counters that the two provisions address conceptually distinct violations and provide conceptually distinct remedies, such that importing the cure portion from one into the other is inappropriate. The forfeiture provision addresses violations of the terms of the loan, which include, but are not limited to, the requirements imposed by the Texas Constitution. The voiding provision addresses violations of the Texas Constitution. The forfeiture provision contains a harsh remedy: invalidating the underlying debt itself and giving a complete windfall to the debtor. To moderate that, the cure provision was inserted. The voiding provision, by contrast, invalidates the lien, leaving the debtor obliged to pay the underlying debt.

6

If Ameriquest prevails on this argument, and the lien is therefore valid, the remaining issue need not be reached.  In the event, however, that Plaintiffs prevail, Ameriquest asserts a second reason why its lien is not invalid.  Ameriquest argues that by accepting a refund of the overcharged amount, Doody and Carrington waived their right to bring this case.  Plaintiff counters by citing *Hruska v. First State Bank of Deanville*,[8] in which the Supreme Court of Texas held that "[a] lien cannot be 'estopped' into existence. . . . Waiver and estoppel are defensive in nature and operate to prevent the loss of existing rights.  They do not operate to create liability where it does not otherwise exist."[9]  If the voiding provision applies here, Plaintiff argues, the lien was never valid and therefore cannot be waived into existence.  Plaintiff also cites other Texas cases indicating a general aversion to permitting homesteaders to waive their constitutional protections.[10]  The Supreme Court of Texas has also, however, articulated narrow exceptions to the general rule that homestead protections are unwaivable.[11]  The amendment to section 50 is new, and has not been extensively considered by the Texas

---

[8] 747 S.W.2d 783 (Tex. 1998).

[9] *Id.* at 785.

[10] *See, e.g., Texas Land & Loan Co. v. Blalock,* 76 Tex. 85, 13 S.W. 12 (1890).

[11] *See, e.g., Lincoln v. Bennett*, 138 Tex. 56, 156 S.W.2d 504, 505 (1941).

7

courts.  For that reason and for the reason that these questions affect important interests of Texas, we are reluctant to undertake in the first instance to decide whether an exception is appropriate here.

The final resolution of this case requires an answer to the question of whether Ameriquest's lien is invalid because Ameriquest charged fees amounting to 4.4 percent, even though it later refunded the overcharged amount.  As this issue raises two questions of first impression interpreting a new provision of the Texas Constitution, we certify those questions to the Supreme Court of Texas.


## III.  QUESTIONS CERTIFIED


1.  Under the Texas Constitution, if a lender charges closing costs in excess of three percent, but later refunds the overcharge, bringing the charged costs within the range allowed by section 50(a)(6)(E), is the lien held by the lender invalid under section 50(c)?


2.  If this question is reached, may the protections of section 50 of the Texas Constitution be waived by a buyer who accepts a refund of any overcharged amounts  when the loan contract provides that accepting such refund waives any claims under section 50?

## IV. CONCLUSION

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the question certified. The answers provided by the Supreme Court of Texas will determine the remaining issues in this case.

QUESTIONS CERTIFIED.