# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-51156

United States Court of Appeals
Fifth Circuit

**FILED**
June 9, 2015

Lyle W. Cayce
Clerk

TERESA GAROFOLO,

Plaintiff - Appellant

v.

OCWEN LOAN SERVICING, L.L.C.,

Defendant - Appellee

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:14-CV-745

Before HIGGINBOTHAM, DENNIS, and HAYNES, Circuit Judges.

PER CURIAM:*

Teresa Garofolo ("Garofolo") appeals the district court's dismissal of her claims against Ocwen Loan Servicing, L.L.C., ("Ocwen") for violating Article XVI, § 50(a)(6)(Q)(vii), of the Texas Constitution and for breach of contract. Because the constitutional cause of action raises an important issue of Texas constitutional law as to which there is no controlling Texas Supreme Court authority, and the authority from the intermediate state appellate courts provides insufficient guidance, we certify the relevant question to the Texas

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-51156

Supreme Court.  *See* TEX. CONST. art. V, § 3-c(a); TEX. R. APP. P. 58.1.  Because the only other claim on appeal—the breach of contract claim—is intertwined with the constitutional claim, we certify that question as well.

I.

Taking Garofolo's factual allegations as true, as we must in reviewing a granted motion to dismiss under Rule 12(b)(6), we briefly recite the facts.  *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011).  In September 2010, Garofolo procured a home equity note in the amount of $159,700 from Ally Bank, secured by a lien on her homestead.  In accord with Article XVI, § 50(a)(6)(Q)(vii) of the Texas Constitution, the Security Instrument provided that "[w]ithin a reasonable time after termination and full payment of the Extension of Credit, Lender shall cancel and return the Note to the owner of the Property and give the owner . . . a release of the lien."  Garofolo timely remunerated every monthly payment to the entity identifying itself as the owner of the note until the note was paid in full on April 1, 2014.  At the time of full payment, Ocwen was the holder of the note.  Mortgage Electronic Registration Systems, Inc. ("MERS"),[1] acting as the nominee for Ally Bank and its successors or assigns, recorded a release of lien on April 28, 2014, in Travis County, Texas.  However, Garofolo did not receive the cancelled promissory note or the release of lien, and she informed Ocwen of this deficiency.

---

[1] As one Texas court has described:

> MERS was created for the purpose of tracking ownership interests in residential mortgages.  Entities such as mortgage lenders subscribe to MERS and pay annual fees for the electronic processing and tracking of ownership and transfers of mortgages.  These members contractually agree to appoint MERS to act as their common agent on all mortgages they register in MERS.

*Robeson v. Mortg. Elec. Registration Sys., Inc.*, No. 02-10-00227-CV, 2012 WL 42965, at *5 (Tex. App.—Fort Worth Jan. 5, 2012, pet. denied) (memo op.) (citations omitted).

No. 14-51156

When Ocwen did not cure this defect within 60 days of receiving notice from Garofolo, she filed suit alleging that Ocwen violated Article XVI, § 50(a)(6)(Q)(vii), of the Texas Constitution and for breach of contract. On both claims, Garofolo sought forfeiture of all principal and interest paid pursuant to the note. Ocwen filed a motion to dismiss, arguing that the Texas Constitution does not obligate a lender or holder to cancel and return a note upon full payment by the owner of the property. Instead, Ocwen contended that the Texas Constitution is satisfied by merely including such a requirement in the terms of the Security Instrument. Because the Security Instrument here included that requirement, Ocwen asserted that Garofolo did not suffer a constitutional injury. Ocwen's motion to dismiss also argued that Garofolo did not allege actual damages, a predicate to recovering money damages for breach of contract. The district court agreed with both arguments and dismissed Garofolo's complaint with leave to amend. Garofolo declined to amend her complaint, and appealed the district court's order.[2] The district court then dismissed Garofolo's suit without prejudice.

---

[2] Garofolo filed an appeal from the district court's order dismissing her complaint without prejudice and granting her leave to amend, but she did not subsequently file an appeal from the district court's final judgment dismissing her action. While the first order did not constitute a final, appealable judgment under 28 U.S.C. § 1291, *see, e.g.*, *Russell v. Watkins Ludlam Winter & Stennis, P.A.*, 181 F. App'x 441, 444 (5th Cir. 2006) (unpublished), we conclude that her appeal is nonetheless timely. Federal Rule of Appellate Procedure 4(a)(2) provides that "[a] notice of appeal filed after the court announces a decision or order— but before the entry of the judgment or order—is treated as filed on the date of and after the entry." In *FirsTier Mortgage Co. v. Investors Mortgage Insurance Co.*, the Supreme Court held that "Rule 4(a)(2) permits a notice of appeal from certain nonfinal decisions to serve as an effective notice from a subsequently entered final judgment." 498 U.S. 269, 274 (1991). As an example, it noted that an appeal is timely under this rule if an appellant files a notice of appeal from a district court's order dismissing his complaint with leave to amend but not from the court's subsequent final dismissal of the action. *Id.* at 275; *see also Covey v. Ocwen Loan Servicing, Inc.*, 574 F. App'x 421, 422 n.1 (5th Cir. 2014) (unpublished).

No. 14-51156

II.

A.  Constitutional Claim

Prior to 1997, Texas prohibited home equity loans. *Stringer v. Cendant Mortg. Corp.*, 23 S.W.3d 353, 354 (Tex. 2000).  Voters amended the Texas Constitution in 1997 to "expand the types of liens for loans that a lender . . . could place against a homestead.  The amendment allows homeowners who have either entirely repaid their home loans or who have accumulated equity in their homestead over and above existing liens to apply for a loan . . . ." *Id.* In passing the amendment, Texas became the last state in the country to allow home equity loans and, unlike most other states, such loans are regulated not by statute, "but by the elaborate, detailed provisions" of the Texas Constitution. *Sims v. Carrington Mortg. Servs., L.L.C.*, 440 S.W.3d 10, 13 (Tex. 2014) (citation and internal quotation marks omitted).  This "elaborate" framework reflects Texas's "strong, historic protection of the homestead." *Id.*

The constitutional provision at issue in this action reads:

(a) The homestead of a family, or of a single adult person, shall be, and is hereby protected from forced sale, for the payment of all debts except for: . . .
    (6) an extension of credit that: . . .
        (Q) is made on the condition that: . . .
            (vii) within a reasonable time after termination and full payment of the extension of credit, the lender cancel and return the promissory note to the owner of the homestead and give the owner, in recordable form, a release of the lien securing the extension of credit or a copy of an endorsement and assignment of the lien to a lender that is refinancing the extension of credit; . . .
            (x) except as provided by Subparagraph (xi) of this paragraph, the lender or any holder of the note for the extension of credit shall forfeit all principal and interest of the extension of credit if the lender or holder fails to comply with the

4

No. 14-51156

> lender's or holder's obligations under the
> extension of credit and fails to correct the failure
> to comply not later than the 60th day after the
> date the lender or holder is notified by the
> borrower of the lender's failure to comply
> by: . . . .

TEX. CONST. art. XVI, § 50(a)(6)(Q)(vii), (x).

Although the Texas Supreme Court has interpreted Section 50(a)(6)(Q) on several occasions—frequently on certification from this court—it has yet to address the provisions at issue in this case. *See, e.g.*, *Stringer*, 23 S.W.3d at 354 (construing TEX. CONST. art. XVI, § 50(a)(6)(Q)(i) on certification from this court).

Garofolo contends that the import of the provisions above is that if a lender fails to return the original note as "paid" and provide a release of lien form within sixty days of demand, it must forfeit all principal and interest. Ocwen, on the other hand, argues that the language "made on the condition that" means simply that the security instrument itself must contain that language (failing which forfeiture is a remedy), but that the Texas Constitution otherwise offers no remedy if the lender includes the language in the security instrument but fails to return the note and release of lien. Garofolo's construction appears to give rise to a drastic remedy, but Ocwen's construction appears to render the requirement a virtual nullity except in the (hopefully rare) circumstance where a lender unscrupulously attempts to enforce a paid note resulting in recoverable damages.

No Texas Supreme Court case directly addresses this question. Garofolo points to language from the Texas Supreme Court, construing a different part of the home equity provisions, that Section 50(a)(6)(Q) articulates the "substantive rights and obligations of the lenders and borrowers." *Stringer,* 23 S.W.3d at 357. To enforce these terms and conditions, *Stringer* noted that Section 50(a)(6)(Q)(x) "provides that the lender forfeits all principal and

interest of the loan if it fails to comply with the obligations set out in [S]ection 50(a)(6)." *Id.* at 356–57.   However, *Stringer* did not confront the precise question presented here: whether inclusion of the return obligations in the note is all that is required or whether compliance with the return obligations is mandated.

The parties cite to various intermediate state appellate court decisions to support their conflicting interpretations.   In *Vincent v. Bank of America, N.A.*, 109 S.W.3d 856, 861 (Tex. App.—Dallas 2003, pet. denied), the borrower alleged that the lender violated the loan agreement, which required payments to be allocated to principal and interest according to a specific formula.   The borrower sought to recover under Section 50(a)(6)(Q)(x), which entitles a borrower to forfeiture of principal and interest for uncured violations of Section 50(a)(6).   *See Vincent*, 109 S.W.3d at 861–62.   First, the court held that the borrower failed to state a constitutional claim because Section 50 does not govern the allocation of payments between principal and interest.   *Id.* at 862. It reasoned that "forfeiture is *only* available for violations of constitutionally mandated provisions of the loan documents."   *Id.*   Second, the borrower argued that the lender's impermissible allocation of payments violated Section 50(a)(6)(L), which requires a loan be "scheduled to be repaid in equal successive monthly installments."   TEX. CONST. art. XVI, § 50(a)(6)(L).   The court also rejected this argument, stating that "[a]s long as the Loan Agreement, as originally entered into by the parties, complies with the provisions of the constitution, forfeiture is not an appropriate remedy."   *Vincent*, 109 S.W.3d at 862.

Garofolo argues that *Vincent*'s instruction that "forfeiture is *only* available for violations of constitutionally mandated provisions of the loan documents" supports her claim because she alleges a violation of a constitutionally mandated provision.   *See* TEX. CONST. art. XVI,

No. 14-51156

§ 50(a)(6)(Q)(vii). On the other hand, *Vincent* also undermines Garofolo's argument by noting that a constitutional violation only occurs if the loan agreement, "as originally entered into by the parties," does not comply with the Constitution. As Ocwen points out, the Security Instrument in this case incorporated Section 50(a)(6)(Q)(vii)'s requirements.

Ocwen's argument is bolstered by *Wells Fargo Bank, N.A. v. Robinson*, 391 S.W.3d 590 (Tex. App.—Dallas 2012, no pet.). In *Robinson*, the borrower alleged that Wells Fargo violated Section 50(a)(6)(D), which mandates that a lien may only be foreclosed by court order. *Id.* at 593. The loan agreement, or deed of trust, incorporated this requirement, and Wells Fargo ultimately sought to foreclose on the property. *Id.* Although the court authorized Wells Fargo to foreclose on May 6, 2008, the foreclosure sale was conducted on a different date—meaning it was not authorized by court order. *Id.* Because the sale was not authorized by court order, the borrower argued that it violated the Texas Constitution and entitled the borrower to principal and interest under Section 50(a)(6)(Q)(x). *Id.* at 595. The court disagreed. Relying on *Vincent*, it held that as long as the deed of trust complied with the Texas Constitution, any subsequent breach by Wells Fargo should be pursued in traditional tort and breach of contract causes of action. *Id.* Thus, the borrower was not entitled to forfeiture because the deed of trust incorporated Section 50(a)(6)(D)'s requirement.[3] *Id.*

In contrast, Garofolo cites to *Box v. First State Bank*, which considered an alleged violation of Section 50(a)(6)(Q)(i). 340 B.R. 782, 784 (S.D. Tex. 2006). That provision "prohibits a lender from requiring the homestead owner to apply loan proceeds to pay another debt owed to the same lender." *See id.*

---

[3] *Galvan v. Centex Home Equity Co., L.L.C.*, 2008 WL 441773 at *4–5 (Tex. App.—San Antonio 2008, no pet.), is not helpful here because it involved review of an arbitration decision and, therefore, applied a highly deferential standard of review.

(describing TEX. CONST. art. XVI, § 50(a)(6)(Q)(i)).  In *Box*, the loan agreement stated, in accordance with Section 50(a)(6)(Q)(i), that the lender did not require the borrower to apply the loan proceeds to pay another debt.  340 B.R. at 784–85.  However, evidence suggested that the lender did in fact require the borrower to use the proceeds for this purpose as a prerequisite for making the loan.  *Id.* at 785.  Because the lender never intended to abide by the loan agreement, the extension of credit was not "made on the condition" that the lender would comply with Section 50(a)(6)(Q)(i).  Accordingly, the court held that the loan was invalid as it violated the Texas Constitution.  *Id.* at 789.  This case is distinguishable, however, as it does not involve a contention that the original lender never intended to satisfy the conditions in the loan origination agreement.

We find these cases inconclusive.  We note that Texas has ardently protected the homestead.  This is manifest by the Texas Supreme Court's statements about Section 50, which imposes "[d]raconian consequence[s for] noncompliance, whether intentional or inadvertent: not merely the loss of the right of forced sale of the homestead, but forfeiture of all principal and interest."  *Fin. Comm'n of Tex. v. Norwood*, 418 S.W.3d 566, 571 (Tex. 2013).  While the courts are to interpret the Texas Constitution by "rely[ing] heavily on its literal text," *id.* at 586 (citation and internal quotation marks omitted), Ocwen's reading of the statute may significantly diminish the "[d]raconian consequence of noncompliance" by allowing lenders to simply ignore the actual import of these constitutional provisions.  *Id.* at 571.  This problem is highlighted by Ocwen's argument that the breach of contract claim was properly dismissed for want of damages.  As such, we cannot conclude that Ocwen's interpretation is correct.  On the other hand, given the fact that a release of lien was promptly filed, it seems somewhat extreme to order a forfeiture of all principal and interest here.

No. 14-51156

We turn, then, to the question of whether we should certify this issue to the Texas Supreme Court.  Under the Texas Constitution, "[t]he supreme court and the court of criminal appeals have jurisdiction to answer questions of state law certified from a federal appellate court."  TEX. CONST. art. V, § 3-c(a).  It "may answer questions of law certified to it . . . if the certifying court is presented with determinative questions of Texas law having no controlling Supreme Court precedent.  The Supreme Court may decline to answer the questions certified to it."  TEX. R. APP. P. 58.1.

"The decision of whether to certify a question lies within our sound discretion."  *Patterson v. Mobil Oil Corp.*, 335 F.3d 476, 487 (5th Cir. 2003) (citation omitted).[4]  We do not "lightly abdicate our mandate to decide issues of state law when sitting in diversity."  *Jefferson v. Lead Indus. Ass'n, Inc.*, 106 F.3d 1245, 1248 (5th Cir. 1997).  While "certification is not a panacea for resolution of those complex or difficult state law questions which have not been answered by the highest court of the state, . . . [it] may be advisable where important state interests are at stake and the state courts have not provided clear guidance on how to proceed."  *In re Katrina Canal Breaches Litig.*, 613 F.3d 504, 509 (5th Cir. 2010) (citation and internal quotation marks omitted).

Thus, while we recognize that certification is to be used sparingly, it is warranted here because: (1) this case involves the construction of the Texas Constitution, (2) it is a matter of particular importance to the State of Texas, and (3) there are no Texas Supreme Court cases dealing with the issue at hand.  *See Sims v. Carrington Mortg. Servs., L.L.C.*, 538 F. App'x 537, 543 (5th Cir. 2013) (unpublished) (listing these factors as a basis for certifying a case involving Section 50 to the Texas Supreme Court).  We note that we have

---

[4]  Of course, the decision whether to accept the certified question is solely within the province of the Texas Supreme Court.  *See* TEX. R. APP. P. 58.1.

previously certified thorny questions under Section 50. *See, e.g., id.* at 543; *Doody v. Ameriquest Mortg. Co.*, 242 F.3d 286 (5th Cir. 2001); *Stringer v. Cendant Mortg. Corp.*, 199 F.3d 190 (5th Cir. 1999). Both our court and the Texas Supreme Court have acknowledged that Section 50 implicates important Texas interests. *See Doody*, 242 F.3d at 290 ("For that reason and for the reason that these questions affect important interests of Texas, we are reluctant to undertake in the first instance to decide whether an exception is appropriate here."); *Sims*, 440 S.W.3d at 13 (opining on Texas's "historic protection of the homestead").[5]

B. Breach of Contract

Garofolo also alleged that Ocwen breached the Security Instrument by failing to return the cancelled note and provide a release of lien.[6] Pursuant to

---

[5] We note, too, that this may become a recurring issue. This identical issue was presented in *Estes v. JP Morgan Chase Bank, N.A.*, No. 14-51103, ___ F. App'x ___, 2015 WL 2386053 (5th Cir. May 20, 2015). Although that case was decided on other grounds, it demonstrates that the issue is not limited to this one case, a fact that supports certifying the question. *See Barnes v. Atl. & Pac. Life Ins. Co. of Am.*, 514 F.2d 704, 706 (5th Cir. 1975).

[6] Section 19 of the Security Instrument states:

All agreements between Lender and Borrower are hereby expressly limited so that in no event shall any agreement between Lender and Borrower or between either of them and any third party, be construed not to allow Lender 60 days after receipt of notice to comply as provided in this Section 19, with Lender's obligations under the Extension of Credit to the full extent permitted by Section 50(a)(6), Article XVI of the Texas Constitution. Borrower understands that the Extension of Credit is being made on the condition that Lender shall have 60 days after receipt of notice to comply with the provisions of Section 50(a)(6), Article XVI of the Texas Constitution. As a precondition to taking any action premised on failure of lender to comply, Borrower will advise Lender of the noncompliance by a notice given as required by Section 14, and will give Lender 60 days after such notice has been received by Lender to comply. Except as otherwise required by Applicable law, only after lender has failed to comply, shall all principal and interest be forfeited by Lender, as required by Section 50(a)(6)(Q)(x), Article XVI of the Texas Constitution in connection with failure by Lender to comply with its obligations under the Extension of Credit . . . ."

The Security Instrument defines "Lender" to include "any holder of the Note who is entitled to receive payments under the Note." Section 23 of the Security Instrument

Section 19 of the Security Instrument, Garofolo sought forfeiture of all interest and principal for this breach of contract.

Ocwen argues, and the district court held, that Garofolo cannot recover principal and interest because forfeiture is solely a constitutional remedy. *See Vincent*, 109 S.W.3d at 862 ("As long as the Loan Agreement, as originally entered into by the parties, complies with the provisions of the constitution, forfeiture is not an appropriate remedy."). Instead, Garofolo's "recourse for [Ocwen's] failure to abide by the terms of [her] loan agreement is to assert traditional tort and breach of contract causes of action, not constitutionally mandated forfeiture." *Wells Fargo*, 391 S.W.3d at 595.

"In Texas, the elements of a claim for breach of contract are: (1) a valid contract between the plaintiff and the defendant, (2) performance or tender of performance by the plaintiff, (3) breach by the defendant, and (4) damage to the plaintiff as a result of the breach." *Lawyers Title Ins. Corp. v. Doubletree Partners, L.P.*, 739 F.3d 848, 858 (5th Cir. 2014) (citation and internal quotation marks omitted). The district court observed, and Garofolo concedes, that she does not allege any actual damages such that she cannot satisfy one of the elements of the breach of contract claim. *See Intercontinental Grp. P'ship v. KB Home Lone Star L.P.*, 295 S.W.3d 650, 655 n.26 (Tex. 2009) ("[M]oney damages are essential in contract claims seeking money damages (though not for contract claims seeking something else).").

On its face, this question does not seem to present the complexities and policy considerations inherent in the constitutional claim. However, in light of the potential intertwining of the two issues and the possibility that the Texas Supreme Court could conclude that the breach of contract claim presents the

---

expressly incorporates the requirement that the Lender shall return the cancelled Note and release of lien to the homestead owner upon full payment.

No. 14-51156

right approach to accessing a forfeiture remedy, we determine that it is prudent to certify both questions for consideration by that court.

C. Certified Questions

Accordingly, we certify the following questions to the Texas Supreme Court:

1. Does a lender or holder violate Article XVI, Section 50(a)(6)(Q)(vii) of the Texas Constitution, becoming liable for forfeiture of principal and interest, when the loan agreement incorporates the protections of Section 50(a)(6)(Q)(vii), but the lender or holder fails to return the cancelled note and release of lien upon full payment of the note and within 60 days after the borrower informs the lender or holder of the failure to comply?

2. If the answer to Question 1 is "no," then, in the absence of actual damages, does a lender or holder become liable for forfeiture of principal and interest under a breach of contract theory when the loan agreement incorporates the protections of Section 50(a)(6)(Q)(vii), but the lender or holder, although filing a release of lien in the deed records, fails to return the cancelled note and release of lien upon full payment of the note and within 60 days after the borrower informs the lender or holder of the failure to comply?

We disclaim any intention or desire that the Supreme Court of Texas confine its reply to the precise form or scope of the questions certified.

QUESTIONS CERTIFIED.