# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
March 21, 2022

Lyle W. Cayce
Clerk

No. 22-50110

Isabel Longoria; Cathy Morgan,

*Plaintiffs—Appellees*,

*versus*

Warren K. Paxton, *in his official capacity as Attorney General of Texas*; Shawn Dick, *in his official capacity as Williamson County District Attorney*,

*Defendants—Appellants*.

Appeal from the United States District Court
for the Western District of Texas
USDC No. 5:21-CV-1223

Before Southwick, Haynes, and Higginson, *Circuit Judges*.

Per Curiam:*

Plaintiffs Isabel Longoria and Cathy Morgan allege that two recently enacted provisions of the Texas Election Code violate the First and Fourteenth Amendments. The district court granted Plaintiffs' request for

---

* Pursuant to 5th Circuit Rule 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5th Circuit Rule 47.5.4.

No. 22-50110

a preliminary injunction, enjoining enforcement of the challenged provisions. Two defendants—Ken Paxton, the Texas Attorney General, and Shawn Dick, the Williamson County District Attorney—appealed.

There are two threshold issues on appeal: whether Plaintiffs have standing to pursue their claims and whether Longoria's claim against Paxton is barred by sovereign immunity. The outcome of these issues depends, in part, on core state law issues: (1) the interpretation of the term "public official" under the Texas Election Code; (2) the scope of "solicitation" within the challenged provision; and (3) the identity of the state officer tasked with enforcing the civil liability provision. Because we lack clear guidance from Texas courts on these issues and the outcome may be dispositive of the entire appeal, we respectfully CERTIFY questions to the Supreme Court of Texas.

CERTIFICATION FROM THE UNITED STATES COURT OF APPEALS FOR THE FIFTH CIRCUIT TO THE SUPREME COURT OF TEXAS, PURSUANT TO TEXAS CONSTITUTION ART. V, § 3-C AND RULE 58 OF THE TEXAS RULES OF APPELLATE PROCEDURE.

TO THE SUPREME COURT OF TEXAS AND THE HONORABLE JUSTICES THEREOF:

## I.    Style of the Case

The style of the case in which this certification is made is *Longoria v. Paxton*, No. 22-50110, in the United States Court of Appeals for the Fifth Circuit. The case is on appeal from the United States District Court for the Western District of Texas. Federal jurisdiction is based on a federal question

No. 22-50110

presented.  The Fifth Circuit, on its own motion, has decided to certify these questions to the Justices of the Texas Supreme Court.

## II.    Background

This suit is a pre-enforcement challenge to two sections of the Texas Election Code: § 276.016(a)(1) (the "anti-solicitation provision") and § 31.129 (the "civil liability provision") as applied to the anti-solicitation provision.  The anti-solicitation provision makes it unlawful for "[a] public official or election official" while "acting in an official capacity" to "knowingly . . . solicit[] the submission of an application to vote by mail from a person who did not request an application."  TEX. ELEC. CODE § 276.016(a)(1).[1]  The civil liability provision creates a civil penalty for election officials who are employed by the state (or one of its political subdivisions) and violate a provision of the election code.  *Id.* § 31.129.  Together, these provisions provide for civil and criminal liability, punishable by a mandatory minimum of six month's imprisonment, fines up to $10,000, and other civil penalties, including termination of employment and loss of employment benefits.  *See id.* §§ 276.016(b), 31.129; TEX. PENAL CODE § 12.35(a)–(b).

Plaintiff Isabel Longoria is the Harris County Elections Administrator, and Plaintiff Cathy Morgan is a Volunteer Deputy Registrar ("VDR") serving in Williamson and Travis Counties.  Together, they filed the present suit against the Texas Attorney General, Ken Paxton, and three District Attorneys, Kim Ogg, Shawn Dick, and Jose Garza, in their official

---

[1] The anti-solicitation provision provides two exceptions. *See* TEX. ELEC. CODE § 276.016(e).  The provision does not apply: (1) if the individual "provide[s] general information about voting by mail, the vote by mail process, or the timeliness associated with voting to a person or the public"; or (2) if the individual engages in solicitation "while acting in the official's capacity as a candidate for a public elective office." *Id.*

No. 22-50110

capacities. Longoria sued Paxton to enjoin enforcement of the civil liability provision, as applied to the anti-solicitation provision. Additionally, as a result of the determination by the Texas Court of Criminal Appeals that the Texas Attorney General has no independent authority to prosecute criminal offenses created by the Texas Election Code, *see State v. Stephens*, No. PD-1032-20, 2021 WL 5917198 (Tex. Crim. App. Dec. 15, 2021) (not released for publication), Longoria and Morgan also brought suit against the District Attorneys in their respective counties to challenge the criminal penalties imposed by the anti-solicitation provision.

Longoria and Morgan allege that they "routinely encourage[] those who are (or may be) eligible to vote by mail to request an application to vote by mail, both through public statements and in interactions with individual voters," while carrying out their duties as Elections Administrator and VDR. Plaintiffs maintain that they would engage in speech that "encourage[s] voters to lawfully vote by mail," but "are currently chilled from doing so because of the risk of criminal and civil liability" imposed by the anti-solicitation and civil liability provisions. As such, they seek (1) a declaratory judgment that the provisions violate the First and Fourteenth Amendments and (2) an injunction prohibiting Defendants from enforcing the provisions.

After filing suit, Plaintiffs moved for a preliminary injunction seeking to enjoin enforcement of the anti-solicitation and civil liability provisions pending final resolution of the case. After an evidentiary hearing, the district court granted Plaintiffs' motion, enjoining the District Attorney Defendants from criminally prosecuting under the anti-solicitation provision and enjoining all Defendants from enforcing the anti-solicitation provision via the civil liability provision. Defendants Paxton and Dick timely appealed.[2] As a

---

[2] Defendants Ogg and Garza filed stipulations indicating that they would not enforce the provisions during the pendency of this litigation. As such, they did not join in

4

result, only Longoria's challenge to the civil penalty permitted by the civil liability provision and Morgan's challenge to the criminal liability imposed under the anti-solicitation provision are before us.

### III.    Jurisdiction & Legal Standards

Our court has jurisdiction over interlocutory appeals of preliminary injunctions under 28 U.S.C. § 1292(a)(1).  Plaintiffs contend that the district court had jurisdiction under 28 U.S.C. § 1331.  However, two of the issues that we must address—whether Plaintiffs have standing and whether sovereign immunity bars Longoria's claim—are threshold jurisdictional questions.  *See Air Evac EMS, Inc. v. Tex. Dep't of Ins.*, 851 F.3d 507, 520 (5th Cir. 2017) (standing); *Texas v. Caremark, Inc.*, 584 F.3d 655, 658 (5th Cir. 2009) (sovereign immunity).  Therefore, before we can reach the ultimate issue on appeal of whether the district court correctly granted Plaintiffs' request for preliminary relief, we must first determine whether the district court had jurisdiction.

We conclude that certifying three questions to the Texas Supreme Court will significantly aid us in resolving those jurisdictional issues.[3]  To determine whether certification is appropriate, we weigh three factors: (1) "the closeness of the question[s]"; (2) federal-state comity; and

---

the appeal.  Therefore, Longoria's potential criminal liability is not before us on appeal, and the preliminary injunction remains in place as to that portion of the lawsuit.

[3] The Texas Constitution grants the Supreme Court of Texas the power to answer questions of state law certified by a federal appellate court.  TEX. CONST. art. V, § 3-c(a).  Texas rules provide that we may certify "determinative questions of Texas law" that have "no controlling Supreme Court [of Texas] precedent."  TEX. R. APP. P. 58.1.

Although neither party requested certification in this case, we can certify questions to the Supreme Court of Texas on our own motion, and that court has graciously accepted our request to do so in the past.  *See, e.g.*, *Norris v. Thomas (In re Norris)*, 413 F.3d 526, 527 (5th Cir. 2005) (per curiam), *certified question answered*, 215 S.W.3d 851 (Tex. 2007).

(3) "practical limitations," such as the possibility of delay or difficulty of framing the issue. *Swindol v. Aurora Flight Scis. Corp.*, 805 F.3d 516, 522 (5th Cir. 2015) (quotation omitted). Those factors have supported our decision to certify important questions of Texas statutory interpretation in the past. *See, e.g.*, *JCB, Inc. v. The Horsburgh & Scott Co.*, 912 F.3d 238, 241 (5th Cir. 2018), *certified question answered*, 597 S.W.3d 481 (Tex. 2019).

## IV.    Discussion

The threshold issues in this case relate to whether the district court had jurisdiction. Among other things, Defendants argue that jurisdiction was lacking because (1) Plaintiffs do not have standing to pursue their claims, and (2) Longoria's claim is barred by sovereign immunity.

With regard to standing,[4] the primary issue is whether Plaintiffs can establish that they have suffered an injury in fact. To prove injury in fact in the First Amendment context, Plaintiffs must demonstrate that (1) they intend "to engage in a course of conduct arguably affected with a constitutional interest," (2) their "intended future conduct is arguably . . . proscribed by" the provision in question, and (3) "the threat of future enforcement of the [challenged provision] is substantial." *Speech First, Inc. v. Fenves*, 979 F.3d 319, 330 (5th Cir. 2020) (alterations in original) (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 161–64 (2014)).

Resolution of whether Plaintiffs have satisfied the injury-in-fact requirement depends on the answer to two questions: (1) whether VDRs are considered "public officials" under the anti-solicitation provision of the

---

[4] To satisfy the Article III standing requirement, Plaintiffs must show: (1) "an injury in fact"; (2) caused by Defendants; and (3) "likely to be redressed by [Plaintiffs'] requested relief." *Stringer v. Whitley*, 942 F.3d 715, 720 (5th Cir. 2019) (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992)).

Texas Election Code, and (2) whether the speech Plaintiffs allege that they intend to engage in constitutes "solicitation" under the anti-solicitation provision.

If VDRs are not "public officials," then Morgan cannot be prosecuted under the statute, and if Longoria and Morgan's desired speech is not considered "solicitation," then the speech they wish to engage in is not proscribed—therefore, they cannot prove that there is a threat of civil liability or criminal prosecution. As such, a definitive answer to the aforementioned questions will aid us in determining whether Plaintiffs have suffered an injury in fact sufficient to confer standing in this case.[5]

Similarly, resolution of the sovereign immunity issue depends upon an interpretation of the relevant provisions. Under the doctrine of sovereign immunity, states and their officers are generally immune from private suits unless they consent or unless Congress validly strips their immunity. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). However, *Ex parte Young*, 209 U.S. 123 (1908), permits a plaintiff to sue a state officer in his or her official capacity for an injunction to stop ongoing violations of federal law. *Id.* at 155–56. But the officer sued must have "some connection with the enforcement of the [challenged] act." *Id.* at 157. We have recognized that to satisfy this requirement, the officer must have "the particular duty to enforce the statute in question and a demonstrated willingness to exercise that duty."

---

[5] We are in receipt of Longoria's Rule 28(j) letter notifying the court of Longoria's resignation from her position as Harris County Elections Administrator, effective July 1, 2022. Our decision to certify questions here has no bearing on the issue of whether Longoria ultimately will have standing to pursue her claims in this case once she leaves office. Our decision here only discusses whether the speech Longoria intends to engage in while still in office constitutes solicitation, sufficient to establish an injury in fact.

No. 22-50110

*Tex. Democratic Party v. Abbott*, 978 F.3d 168, 179 (5th Cir. 2020) (quotation omitted).

Our court continues to address these sovereign immunity questions of "some connection" in Texas Election Code cases, even as recently as last week. *See Richardson v. Scott*, No. 20-50774, — F.4th — (5th Cir. Mar. 16, 2022); *Lewis v. Scott*, No. 20-50654, — F.4th — (5th Cir. Mar. 16, 2022); *Tex. All. for Ret. Ams. v. Scott*, No. 20-40643, — F.4th — (5th Cir. Mar. 16, 2022). Thus, the question of whether a sued state official is the proper official to enforce "the particular statutory provision that is the subject of the litigation" continues to be an issue before us. *See Tex. All. for Ret. Ams.*, — F.4th — (quotation omitted).

In this case, Paxton maintains that sovereign immunity bars Longoria's claim against him because he is not the state officer with the duty to enforce the civil liability provision.[6] Therefore, he claims that he lacks the requisite connection for *Ex parte Young* application. As noted above, our precedent requires us to conduct a provision-by-provision analysis. *See id.*; *Tex. Democratic Party*, 978 F.3d at 179. However, such an analysis here provides little clarity on Paxton's role in enforcement. The anti-solicitation is silent as to the enforcement official. *See* TEX. ELEC. CODE § 276.016(a)(1). Based upon the recent decision from the Texas Court of Criminal Appeals in *Stephens*, the parties agree that Paxton does not have the authority to seek criminal prosecution. But the civil liability provision is

---

[6] We recognize that Paxton has the obligation to represent the state in litigation. TEX. CONST. art. IV, § 22 (notes and commentary) ("The attorney general is the chief law officer of the state" and one of his or her "two principal functions" is "representing the state in civil litigation."). However, having an obligation to *represent* a party in litigation is not the same thing as having enforcement authority. *See, e.g.*, *Cameron v. EMW Women's Surgical Ctr., P.S.C.*, 142 S. Ct. 1002, 1012 n.5 (2022). Thus, it appears this section of the Texas Constitution does not answer our question.

similarly silent as to who may enforce it—the provision only indicates that "[a]n election official may be liable to th[e] state." *Id.* § 31.129. Because the civil liability provision provides little insight on who may enforce it, we are left without a definitive answer as to whether Paxton has the requisite connection for *Ex parte Young* application.

Because each of the aforementioned questions necessarily invoke overarching issues regarding newly enacted provisions of state law and the answers to each will affect future proceedings in this federal suit, we conclude that certification to the Texas Supreme Court is necessary and valuable. *See McKesson v. Doe*, 141 S. Ct. 48, 51 (2020) (per curiam) ("In exceptional instances . . . certification is advisable before addressing a constitutional issue.").

Consideration of the factors cited in *Swindol* likewise demonstrates that certification is appropriate in this case. First, each question presents close issues, and there is limited state law authority to guide our analysis. *Swindol*, 805 F.3d at 522. With regard to question one, the anti-solicitation provision applies only to the conduct of "public official[s]" and "election official[s]." TEX. ELEC. CODE § 276.016(a). "Election official" is statutorily defined but does not include VDRs. *See id.* § 1.005(4–a). Conversely, the Election Code leaves "public official" undefined. *See generally id.*

Another separate Texas statute addressing the judicial branch of Texas provides a definition of "public official" as follows: "*In this section*, a 'public official' means any person selected, appointed, employed, or otherwise designated as an officer, employee, or agent . . . ." TEX. GOV'T CODE § 22.304(a) (emphasis added). However, there are several reasons why we question whether the Government Code definition should control here. First, that definition appears in an entirely different title of Texas

No. 22-50110

statutory law: a chapter on Appellate Courts, expressly stating that the definition applies "in this section." *Id.* It then details a specific criminal offense but does not say anything about the applicability of that definition elsewhere. Indeed, there is no incorporation by reference or text in the statute indicating that the Government Code's definition of "public official" applies outside this narrow scope. Conversely, this statute addresses a very specific matter of the crime of improper communications to clerks of court for the construction of appellate panels to hear prioritized appeals of injunctive relief or writs of mandamus under Chapter 273 of the Election Code—it does not apply to the provisions relevant here and does not apply to all appeals.[7] Second, applying a broad interpretation of this phrase elsewhere could create a number of wide-ranging ramifications without indication that the Texas legislature so intended. Without guidance from a Texas court or the Texas legislature, we are hesitant to permit such broad and automatic application.

---

[7] Indeed, the point is to add public officials, not limit public officials. The full text demonstrates as much:

(a) In this section, "public official" means any person elected, selected, appointed, employed, or otherwise designated as an officer, employee, or agent of this state, a government agency, a political subdivision, or any other public body established by state law.

(b) Notwithstanding any other law or rule, a court proceeding entitled to priority under Section 22.305 and filed in a court of appeals shall be docketed by the clerk of the court and assigned to a panel of three justices determined using an automated assignment system.

(c) A person, including a public official, commits an offense if the person communicates with a court clerk with the intention of influencing or attempting to influence the composition of a three-justice panel assigned a specific proceeding under this section.

(d) An offense under this section is a Class A misdemeanor.

Tex. Gov't. Code § 22.304

No. 22-50110

Moreover, even if we applied the Government Code's definition of public official here, it is difficult to conclude that VDRs fit within that definition. We question, first, whether VDRs are truly "appointed" to their positions, beyond a mere technical sense. The state provides no discretion to the person who "appoints" the VDRs for their county. Instead, the process of becoming a VDR is mechanical in nature—an individual simply contacts the voter registrar, completes a training, passes an examination, and then receives a certificate "appointing" them to this role.[8] As such, it's not entirely clear whether that process is sufficient to qualify an individual as an appointed "public official" of the state. Second, we question whether VDRs are truly "agents" of the state. One could assume that VDRs are, in essence, merely couriers of forms and completed ballots—they are tasked with handing out voter registration applications and reviewing applications for completeness. *See* TEX. ELEC. CODE §§ 13.042(a), 13.039(a). Based on our interpretation, it appears that the only "power" that a VDR has is the ability to "distribute voter registration application forms throughout the county and receive registration applications submitted to the deputy in person." *Id.* § 13.038. If they receive a completed ballot, they must immediately deliver it to the county registrar. *Id.* § 13.042. Conversely, it appears that it is the *county registrar* "[who] review[s] each submitted application . . . to determine whether it complies with" all eligibility requirements, *id.* § 13.071(a), "approve[s] the application," *id.* § 13.072(a), "indicates that the applicant is eligible for registration," *id.* § 13.072(a)(1), and "prepares [the] voter registration certificates," *id.* § 13.142(a)(1). So, while *county registrars* are undoubtedly "agents," one could determine that VDRs' duties in the voting registration process are more in the realm of a

---

[8] *See* TEX. ELEC. CODE §§ 13.001, 13.002, 13.033.

delivery person than an "agent."[9]  Of course, no one contends that these volunteers are "employees" or "officers" of Texas.  But, at bottom, it's unclear whether a volunteer may (or should) be considered an agent of the state simply because they hand out voter registration forms and courier those forms to a county registrar.

It furthermore does not appear that any Texas court has opined on whether VDRs are considered public officials, and even the district court was unsure.  In the absence of a statutory definition or Texas court interpretation, we are left without clear guidance as to who qualifies as a "public official." With these considerations in mind, we conclude that whether or not VDRs are "public officials" under the Election Code is an open question.[10]

The second question—the scope of "solicitation"—is similarly open. Plaintiffs contend that they would like to "encourage[] those who are (or may be) eligible to vote by mail to request an application to vote by mail, both through public statements and in interactions with individual voters." Specifically, Plaintiffs testified to some examples of speech that they wish to engage in: going door-to-door in their neighborhood, recommending that people vote early if they are going to be out of town on election day, and answering phone calls about mail-in voting.  In so doing, they would, for example, like to "give mere truthful advice in response to questions from individual voters," such as specifically giving advice on mail-in ballots in response to questions about voting.  Plaintiffs contend that they are chilled from doing so, however, due to fear of violating the anti-solicitation

---

[9] We certainly respect the volunteer work of the VDRs; we just question whether that makes them a Texas "public official" within this provision.

[10] No one disputes that, while she is still in office, Longoria is an "election official." However, we must determine Morgan's standing because she is the only one before us as to whom the preliminary injunction regarding criminal prosecution is at issue.

No. 22-50110

provision.  But it's not entirely clear whether any of the aforementioned examples of speech about mail-in voting would be considered "solicitation" under the anti-solicitation provision.  Indeed, Morgan testified that she wasn't sure whether her interactions would count as solicitation under the law, but she was "scared that [they] would."  Similarly, Longoria testified that she had "not seen anything that define[d] solicitation from the Secretary of State's office," and she was concerned by the "vague, gray, nebulous" line between permitted and proscribed speech.

Plaintiffs are not the only ones confused about what constitutes "solicitation."  In fact, *no one* at the preliminary injunction hearing could articulate what speech was proscribed by the provision.  The Director of the Elections Division of the Texas Secretary of State's office testified that his office had not given definitions to the election workers about what constituted solicitation,[11] and beyond a "general dictionary definition," the office internally did not know what the word "solicit" meant under the provision.  Similarly, when questioned by the district court and our court, defense counsel did not contend that Plaintiffs' proposed speech constituted solicitation.  Defense counsel intimated that "solicitation as used in criminal statutes often includes a more formal requirement" than the speech that Plaintiffs described, but likewise could not provide a clear standard.  Defense counsel urged the district court to consider the text of the statute, dictionaries, and legislative history to determine the statute's scope, but also conceded that an analysis of the word "solicit" would require "an *Erie* question of state law."  Near the conclusion of the hearing, the district court

---

[11] Indeed, the term "solicitation" has, as a key definition, a criminal definition. *See, e.g.*, *Solicitation*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("The criminal offense of urging, advising, commanding, or otherwise inciting another to commit a crime."). Importantly, neither Plaintiff is requesting to advise people who are not eligible to vote by mail to do so, only those who are permitted to do so under existing Texas law.

13

voiced its concern that none "of the government's lawyers [could] tell [the court] what solicit mean[t]."

At bottom, in the absence of state court authority interpreting the anti-solicitation provision and given the uncertainty among all familiar parties as to what speech falls under the provision's umbrella, the scope of solicitation is unclear—does "solicitation" mean only requesting criminal conduct, i.e., submitting an application to vote by mail illegally?  Does it mean recommending voting by mail?  Does it mean directing or telling someone to do so?  In the absence of state law authority, this question also presents a close call weighing in favor of certification.

The third question is likewise open.  We are aware of no authority from Texas courts determining who is statutorily tasked with enforcement of the civil liability provision.  Thus, without clear guidance, this question presents a close call.

The second factor cited in *Swindol*, federal-state comity, also weighs heavily in favor of certification.  *See* 805 F.3d at 522.  If we affirm the preliminary injunction, we would effectively invalidate a new state law on constitutional grounds, at least for now.  As the Supreme Court has noted, certification is particularly "appropriate where an unconstrued state statute is susceptible of a construction by the state judiciary which might avoid in whole or in part the necessity for federal constitutional adjudication." *Bellotti v. Baird*, 428 U.S. 132, 146–47 (1976) (internal quotation marks and citation omitted).  Here, a federal court has questioned the constitutionality of the anti-solicitation provision recently passed by the Texas legislature and, presumably, important to them, making consideration of the actual meaning of the statute highly important.  *See id.*

Additionally, we recognize that the definition and scope of a Texas statute recently enacted by the Texas legislature and directly impacting

Texas elections presents a "matter of particular importance to the State of Texas." *Garofolo v. Ocwen Loan Serv., L.L.C.*, 626 F. App'x 59, 64 (5th Cir. 2015) (per curiam). Because the resolution of these questions implicates important Texas interests, we are hesitant to undertake these issues in the first instance. Rather, federal-state comity weighs heavily in favor of certification.

Third, and finally, practical considerations do not disfavor certification; while we recognize the time sensitivity of the issues at hand, there is no reason to think that certification would cause undue delay—to the contrary, the Texas Supreme Court is known for its "speedy, organized docket." *Degan v. Bd. of Trs. of Dall. Police & Fire Pension Sys.*, 766 F. App'x 16, 19–20 (5th Cir. 2019) (per curiam), *certified questions answered*, 594 S.W.3d 309 (Tex. 2020). Indeed, in the past, the Texas Supreme Court graciously accepted certification of cases that required prompt timing. We recognize that the Texas Supreme Court is a busy court with numerous pressing and important items on its docket. We defer to that court as to when to decide this matter, though we respect that they are aware of the impending run-off elections and the time sensitivity of the issues here, given that this is an election year. We know that if the court decides to accept this certification, it will conduct its timing appropriately.

We therefore conclude that certification is warranted.

## V.    Questions Certified

We respectfully request that the Texas Supreme Court address and answer the following questions.

(1) Whether Volunteer Deputy Registrars are "public officials" under the Texas Election Code;

(2) Whether the speech Plaintiffs allege that they intend to engage in constitutes "solicitation" within the context of

15

No. 22-50110

Texas Election Code § 276.016(a)(1). For example, is the definition narrowly limited to seeking application for violative mail-in ballots? Is it limited to demanding submission of an application for mail-in ballots (whether or not the applicant qualifies) or does it broadly cover the kinds of comments Plaintiffs stated that they wish to make: telling those who are elderly or disabled, for example, that they have the opportunity to apply for mail-in ballots?; and

(3) Whether the Texas Attorney General is a proper official to enforce Texas Election Code § 31.129.

## VI.    Conclusion

We disclaim any intent that the Texas Supreme Court confine its reply to the precise form or scope of the questions certified. More generally, if the Texas Supreme Court determines a more effective expression of the meaning of these terms than answering the precise questions we have asked, we defer to the court to take that course. We transfer to the Texas Supreme Court the record and appellate briefs in this case with our certification. We retain this appeal pending the Texas Supreme Court's response.

QUESTIONS CERTIFIED TO THE SUPREME COURT OF TEXAS.